**2018-1606**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ATEN INTERNATIONAL CO., LTD.,

*Appellant*,

*v.*

UNICLASS TECHNOLOGY CO., LTD., ELECTRONIC TECHNOLOGY CO., LTD., AIRLINK 101, PHOEBE MICRO, INC., BROADTECH INTERNATIONAL CO., LTD. D/B/A LINKSKEY, BLACK BOX CORPORATION, BLACK BOX CORPORATION OF PENNSYLVANIA,

*Appellees*.

Appeal from the United States District Court for the Central District of California in No. 2:15-cv-004424, Judge Andrew J. Guilford

## RESPONSE BRIEF FOR APPELLEES

Robert E. Aycock
PIA ANDERSON MOSS HOYT
136 E. South Temple, 19th Floor
Salt Lake City, UT 84111
(801) 350-9000

*Counsel for Appellees*

June 27, 2018

**2018-1606**

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, counsel for Appellees certifies the following:

1. The full name of every party represented by me is:

- Uniclass Technology Co., Ltd.
- Electronic Technology Co., Ltd.
- Airlink 101
- Phoebe Micro, Inc.
- Broadtech International Co., Ltd. d/b/a Linkskey
- Black Box Corporation
- Black Box Corporation of Pennsylvania

2. The names of the real party in interest represented by me are:

- Uniclass Technology Co., Ltd.
- Electronic Technology Co., Ltd.
- Airlink 101
- Phoebe Micro, Inc.
- Broadtech International Co., Ltd. d/b/a Linkskey
- Black Box Corporation
- Black Box Corporation of Pennsylvania

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by us are:

- <u>Dongguan Uniclass</u> = Uniclass Technology Co., Ltd., Electronic Technology Co., Ltd.
- <u>Phoebe Micro, Inc.</u> = Airlink 101
- <u>BBox Holding Company</u> = Black Box Corporation, Black Box Corporation of Pennsylvania

**2018-1606**

4. The names of all law firms and the partners or associates that appeared for the parties represented by me in the trial court, or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are:

   - Pia Anderson Moss Hoyt: William B. Chadwick, Brody N. Miles
   - Pacific Law Group: Jen-Feng Lee, Kenneth K. Tanji, Jr.
   - Workman Nydegger: Matthrew A. Barlow
   - Scheef & Stone: Eric C. Wood.

   *Joseph G. Pia of Pia Anderson Moss Hoyt is acting backup counsel.

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal (*see* Fed. Cir. R. 47.4(a)(5) and 47.5(b)) are:

   *ATEN International Co., Ltd., v. Uniclass Technology Co., Ltd. et al.,* Federal Circuit Appeal No. 18-1922.

Dated: June 27, 2018

*/s/ Robert E. Aycock*
Robert E. Aycock
*Counsel for Appellees*

**2018-1606**

## TABLE OF CONTENTS


CERTIFICATE OF INTEREST ..... i

TABLE OF AUTHORITIES ..... v

STATEMENT OF RELATED CASES ..... viii

STATEMENT OF THE ISSUES ..... 1

STATEMENT OF CASE ..... 3

A. Trial record of the invalidity of the ’141 Patent ..... 3

B. Trial Record of Noninfringement of the ’141 and ’289 Patents ..... 5

C. Waiver of objection to expert’s conflicting ordinary meanings of claim terms. ..... 7

D. “Dueling Claim Constructions” ..... 9

E. ATEN’s Partially Denied Motion for JMOL ..... 10

F. Uniclass’s Motion for Summary Judgment on Lost Profits ..... 11

SUMMARY OF ARGUMENT ..... 13

STANDARD OF REVIEW ..... 17

ARGUMENT ..... 19

I. The Jury’s invalidity verdict of the ’141 patent is supported by substantial evidence. ..... 19

A. There is substantial evidence that ATEN’s CS-1762 device antedates the critical date. ..... 19

B. There is substantial evidence that the GB ’540 anticipates the ’141 patent. ..... 22

II. The district court did not abuse its discretion by denying ATEN’s request for a new trial based on Mr. Dezmelyk’s ordinary meaning testimony. ..... 24

A. ATEN waived its right to bring arguments regarding Mr. Dezmelyk’s ordinary meaning testimony. ..... 25

B. ATEN was not unfairly prejudiced. ....29

C. The Jury's reconcilable special verdicts on the '141 patent do not warrant a new trial....33

D. The Jury's reasonable verdict of non-infringement of the '289 patent. ....35

III. The Jury's Noninfringement Verdicts are Supported by Substantial Evidence. ....37

E. ATEN is not entitled to JMOL of infringement of the '141 patent. ....37

F. ATEN is not entitled to JMOL of infringement of the '289 patent. ....46

IV. Summary Judgment on Lost Profits Damages should not be reversed. ....50

G. Lost profits damages must be based on "sound economic proof." 50

H. The district court correctly found that Mr. Snell's opinion was not based on sound economic principles because of his failure to conduct a market share analysis and properly account for other competitors. ....51

CONCLUSION AND RELIEF SOUGHT ....57

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Cases**

*Abtox, Inc. v. Exitron Corp.*,
122 F.3d 1019 (Fed. Cir. 1997) ....................43
*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................56
*Baumler v. State Farm Mut. Auto. Ins. Co.*,
493 F.2d 130 (9th Cir. 1974) .................... 22, 33
*Broadcom Corp. v. Emulex Corp.*,
732 F.3d 1325 (Fed. Cir. 2013) .................... 41, 42
*Centricut, LLC v. Esab Grp., Inc.*,
390 F.3d 1361 (Fed. Cir. 2004) .................... 10, 11
*Chrimar Sys., Inc. v. Alcatel-Lucent Enter. USA Inc.*,
No. 6:15-CV-00163-JDL, 2017 WL 568712 (E.D. Tex. Feb. 13, 2017) ............29
*Cohesive Techs., Inc. v. Waters Corp.*,
543 F.3d 1351 (Fed. Cir. 2008) ....................51
*Commil USA, LLC v. Cisco Sys., Inc.*,
135 S. Ct. 1920 (2015)....................35
*Cordance Corp. v. Amazon.com, Inc.*,
658 F.3d 1330 (Fed. Cir. 2011) ....................34
*Cordis Corp. v. Boston Sci. Corp.*,
561 F.3d 1319 (Fed. Cir. 2009) ....................19
*Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc.*,
424 F.3d 1293 (Fed. Cir. 2005) ....................37
*Duro-Last, Inc. v. Custom Seal, Inc.*,
321 F.3d 1098 (Fed. Cir. 2003) ....................39
*Eon Corp. IP Holdings v. Silver Spring Networks*,
815 F.3d 1314 (Fed. Cir. 2016) .................... 35, 36
*Flores v. City of Westminster*,
873 F.3d 739 (9th Cir. 2017) ....................18
*Gaus v. Conair Corp.*,
363 F.3d 1284 (Fed. Cir. 2004) ....................24
*Grain Processing Corp. v. Am. Maize-Prod. Co.*,
185 F.3d 1341 (Fed. Cir. 1999) .................... 50, 51

*Hagen v. City of Eugene*,
736 F.3d 1251 (9th Cir. 2013) ....................39
*Harper v. City of Los Angeles*,
533 F.3d 1010 (9th Cir. 2008) ....................17
*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
87 F. Supp. 3d 928 (N.D. Cal. 2015) ....................34
*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*,
4 F.3d 819 (9th Cir. 1993) .................... 18, 30
*Johnson v. Paradise Valley Unified Sch. Dist.*,
251 F.3d 1222 (9th Cir. 2001) .................... 17, 41, 45
*Landes Const. Co. v. Royal Bank of Canada*,
833 F.2d 1365 (9th Cir. 1987) ....................33
*Lavender v. Kurn*,
327 U.S. 645 (1946) .................... 18, 37
*LifeNet Health v. LifeCell Corp.*,
837 F.3d 1316 (Fed. Cir. 2016) ....................25
*Lucent Techs. Inc. v. Microsoft Corp.*,
287 F. Supp. 2d 1107 (S.D. Cal. 2011) ....................33
*McCollough v. Johnson, Rodenburg & Lauinger, LLC*,
637 F.3d 939 (9th Cir. 2011) .................... 18, 30
*Mentor H/S, Inc. v. Med. Device All., Inc.*,
244 F.3d 1365 (Fed. Cir. 2001) .................... 37, 41, 42, 47
*Micro Chem., Inc. v. Lextron, Inc.*,
318 F.3d 1119 (Fed. Cir. 2003) .................... 19, 56
*Nelson v. Adams USA, Inc.*,
529 U.S. 460 (2000) ....................25
*Nobelbiz, Inc. v. Glob. Connect, L.L.C.*,
No. 6:12-CV-244, 2015 WL 11089488 (E.D. Tex. July 16, 2015) ....................34
*Nobelpharma AB v. Implant Innovations, Inc.*,
141 F.3d 1059 (Fed. Cir. 1998) .................... 37, 41
*Norsk Hydro Canada, Inc. v. United States*,
472 F.3d 1347 (Fed. Cir. 2006) ....................25
*Oiness v. Walgreen Co.*,
88 F.3d 1025 (Fed. Cir. 1996) ....................51
*Panduit Corp. v. Stahlin Bros. Fibre Works*,
575 F.2d 1152 (6th Cir. 1978) ....................51

*ParkerVision, Inc. v. Qualcomm Inc.*,
621 F. App'x 1009 (Fed. Cir. 2015)........................................................................42
*Passantino v. Johnson & Johnson Consumer Prod., Inc.*,
212 F.3d 493 (9th Cir. 2000) ..............................................................................33
*Pavao v. Pagay*,
307 F.3d 915 (9th Cir. 2002) .................................................................. 19, 21, 39
*Pierce v. S. Pac. Transp. Co.*,
823 F.2d 1366 (9th Cir. 1987) ............................................................................35
*Proveris Sci. Corp. v. Innovasystems, Inc.*,
536 F.3d 1256 (Fed. Cir. 2008) ..........................................................................42
*Rite-Hite Corp. v. Kelley Co.*,
56 F.3d 1538 (Fed. Cir. 1995) ............................................................................50
*S.E.C. v. Todd*,
642 F.3d 1207 (9th Cir. 2011) ................................................................ 17, 20, 21
*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
135 S. Ct. 831 (2015)...........................................................................................35
*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
546 F.3d 991 (9th Cir. 2008) ..............................................................................17
*TVIIM, LLC v. McAfee, Inc.*,
851 F.3d 1356 (Fed. Cir. 2017) .............................................................. 17, 18, 46
*TypeRight Keyboard Corp. v. Microsoft Corp.*,
374 F.3d 1151 (Fed. Cir. 2004) ..........................................................................19
*United States v. Young*,
573 F.2d 1137 (9th Cir. 1978) ...................................................................... 40, 47
*Wechsler v. Macke Int'l Trade, Inc.*,
486 F.3d 1286 (Fed. Cir. 2007) ..........................................................................51
*Zhang v. Am. Gem Seafoods, Inc.*,
339 F.3d 1020 (9th Cir. 2003) ............................................................................33

Rules

Fed. R. Civ. P. 50...............................................................................................39
Fed. R. Civ. P. 50(b) ..........................................................................................40
Fed. R. Civ. P. 56(c)...........................................................................................19
Fed. R. Evid. 705 ...............................................................................................24

**2018-1606**

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Counsel for Appellees certifies that an appeal from the same civil action in the lower court is currently pending before this Court: *ATEN International Co., Ltd., v. Uniclass Technology Co., Ltd. et al.*, Federal Circuit Appeal No. 18-1922. These appeals are to be considered companion cases and are assigned to the same merits panel for oral argument. Dkt. 18.

**2018-1606**

## STATEMENT OF THE ISSUES

(1) Whether substantial evidence supports the Jury's finding of anticipation of U.S. Patent No. 8,589,141 ("the '141 patent"), where:

(i) Uniclass[1] provided evidence that ATEN's own device predated the critical date and practiced every claimed limitation; and

(ii) Uniclass presented evidence of an independent prior art reference that predated the critical date and practiced every claimed limitation.

(2) Whether a new trial is warranted where:

(i) ATEN failed to raise any objection or request any clarifying instruction as to various interpretations of the plain and ordinary meaning of certain claim terms and therefore waived this argument;

(ii) the district court did not abuse its discretion by allowing testimony to stand without a corrective jury instruction that did not prejudice ATEN; and

(iii) the Jury presented a special verdict that could be reasonably reconciled.

[1] "Uniclass" or "Defendants" or "Appellees" refers collectively to all Appellees: Uniclass Technology Co., Ltd, Electronic Technology Co., Ltd., Airlink 101, Phoebe Micro, Inc., Broadtech International Co., Ltd. d/b/a Linkskey, Black Box Corporation, and Black Box Corporation of Pennsylvania.

(3) Whether substantial evidence supports the Jury's verdict of noninfringement of the '141 patent where:

(i) ATEN had the burden of persuasion at the trial court and failed to meet that burden;

(ii) Uniclass presented a reasonable, ordinary meaning of the "connected" term; and

(iii) Uniclass presented evidence under any reasonable interpretation that the accused devices did not practice the asserted claims.

(4) Whether substantial evidence supports the Jury's verdict of noninfringement of U.S. Patent No. 7,640, 289 ("the '289 patent"), where:

(i) ATEN had the burden of persuasion at the trial court and failed to meet that burden;

(ii) Uniclass presented a reasonable, ordinary meaning of the "detecting whether the first port is occupied" term; and

(iii) Uniclass presented evidence under any reasonable interpretation that the accused devices did not practice the asserted claims.

(5) Whether the district court correctly granted summary judgment as to ATEN's claim for lost profits damages.

## STATEMENT OF CASE

### A. Trial record of the invalidity of the ’141 Patent

After an eight-day trial and almost three days of deliberation, the Jury returned a verdict of invalidity of the ’141 patent and of noninfringement of the ’141 and ’289 patents based upon the presentation of substantial evidence from both ATEN and Uniclass, their fact witnesses, experts, and clear instructions from the court. Appx9765-9771. At the close of all evidence, the district court denied ATEN’s oral motion for judgment as a matter of law (JMOL) finding that ATEN had not “met the standards of the applicable rule.” Appx9366 at 4:18-21. The district court also denied ATEN’s renewed motion for JMOL on the same issues ATEN now appeals. Appx1-11.

The Jury concluded that all asserted claims of the ’141 patent were invalid as anticipated. Defendants presented two separate prior art references that each independently provided a sufficient basis for the Jury’s verdict finding: ATEN’s CS-1762 device and Great Britain Patent No. 2,352,540 (“GB ’540”).

#### *1. ATEN’s CS-1762 Device Prior Art*

At trial, evidence and testimony was presented about ATEN’s CS-1762 manual and testing of a CS-1762 device. This evidence demonstrated that the ’141 patent was filed on July 24, 2007, and the CS-1762 manual was dated June 4, 2004. Appx9302-9303 at 176:22-177:22. Mr. Dezmelyk, Uniclass’s expert, testified that

the manual disclosed many of the elements of the accused claims of the ’141 Patent, including hot key switching, USB input devices and emulation. Appx9303-9305 at 177:23-179:11; Appx 9307-9311 at 181:10-185:7. He also testified that he tested an actual CS-1762 device that had firmware from before the critical date of the ’141 patent. Appx9311-9316 at 185:6-190:13; Appx9338 at 212:5-22. He testified that those tests confirmed the presence of all of the ’141 patent claim limitations within that device. *Id.* at 185:6-190:13. ATEN presented no rebuttal evidence such as a contemporaneous CS-1762 switch, 2006 firmware, or testimony from Mr. Kevin Chen, ATEN’s CEO, the inventor and technical authority as to its CS-1762 device.

#### *2. GB ’540 Prior Art*

During trial, Mr. Dezmelyk explained extensively to the Jury in the context of the invalidity of ATEN’s other asserted patents regarding the GB ’540’s disclosure of “emulating one or more of the console devices.” Appx9296 at 170:9-20, Appx9301-9302 at 175:20-176:6; Appx9285-9286 at 159:16-160:18. Mr. Dezmelyk’s testimony of what the GB ’540 discloses concerning emulation is equally applied to his invalidity opinions of the ’141 patent and supports the Jury’s verdict. ATEN spent little time in its cross-examination of Mr. Dezmelyk on this point or argued against his testimony at closing. Additionally, the Jury heard ATEN’s expert, Dr. Lavian, explicitly conceded on cross-examination that the GB ’540’s Cypress chip implements the claimed “host emulator function.” Appx9517-

9518 at 155:14-156:1. During its deliberations, the Jury requested that a copy of the GB ’540 Patent be given to them. Appx7948.

The Jury found that Defendants the ’141 patent was invalid.

### B. Trial Record of Noninfringement of the ’141 and ’289 Patents

At trial, ATEN asserted thirty-four claims from four patents against dozens of products. Appx9206-9207 at 80:9-81:8. Although ATEN spent the majority of all trial time with its technical expert, Dr. Lavian, on the stand, the Jury returned a verdict of no infringement. *See* Appx8840 at 51:16-19. Dr. Lavian testified that it took “several hours” to explain all of the elements at a “high level.”

ATEN and Dr. Lavian spent most of their time discussing and explaining to the Jury “complicated” source code of the accused products, which source code Dr. Lavian later admitted to the Jury he did not even need to look at to form his infringement opinions. Appx8482 at 71:20-24. On direct examination, Dr. Lavian claimed he had performed extensive testing on the Prima T8. Appx8483-8484 72:12-73:5. On cross examination, he had to admit that he had never possessed or had access to a Prima T8 product and therefore could not have tested it. Appx8765-8770 at 51:3-56:21; *see also* Appx9096 at 146:9-11. The Jury was certainly “at liberty to disbelieve” ATEN.

### 1. *Noninfringement of ’141 Patent*

Even if ATEN’s has not waived its claim construction argument, there is sufficient evidence in the record that independently supports the Jury’s noninfringement verdict. ATEN’s infringement position was undermined by Dr. Lavian’s conflicting testimony that “emulated” means both “connected” ***and*** “disconnected.” *Compare* Appx8838 at 49:15-24 *with* Appx9524 at 62:7-12. Mr. Dezmelyk and Uniclass’s engineer both explained that the accused products are always emulated and therefore could never “start emulating” or be “connected” or “disconnected” as claimed.

### 2. *Noninfringement of ’289 Patent*

Mr. Dezmelyk testified that the Prima T products do not include all the elements of the asserted claims of the ’289 patent. Appx9220-9251 at 94:5-125:24. He explained “there’s no process of detecting whether the port is occupied,” because “the Prima T device never looks at whether there’s actually a cable in the port. It simply waits for messages from the other device.” Appx9231 at 105:10-11; Appx9230 at 104:14-16.

Even without Mr. Dezmelyk’s testimony, it is reasonable that the Jury found that ATEN failed to prove that any product infringed the ’289 patent. Dr. Lavian admitted that he never tested or used the accused Prima T products, and instead based his analysis and opinion on inspection of a dissimilar and non-accused product. Appx8765-8770 at 51:3-56:21; *see also* Appx9096 at 146:9-11.

### C. Waiver of objection to expert's conflicting ordinary meanings of claim terms.

ATEN on appeal argues that Mr. Dezmelyk offered unreliable trial testimony regarding claim construction that led to jury confusion. ATEN waived its right to bring arguments regarding Uinclass's expert's "ordinary meaning" testimony. It was not until the last day of trial that ATEN moved for a post-testifying *Daubert* motion. However, it was limited to Mr. Dezmelyk's invalidity testimony and did not fairly put the district court or Uniclass on notice as to the substance of the issues that it now appeals.

ATEN's late, first-time objection highlights that it had repeatedly and decidedly abandoned any complaint to the experts' differences of opinion as to the plain and ordinary meaning of the terms "detecting"/"occupied" ('289 patent) and "connect"/"disconnect" ('141 patent). At claim construction, neither party argued for a construction of "detecting"/"occupied." Regarding "connect"/"disconnect," ATEN successfully argued that a construction was not necessary and that the plain and ordinary meaning should apply. Appx1878-1880.

Thereafter, the parties prepared extensive expert reports on infringement and validity. ATEN alone submitted three expert reports totaling more than six thousand pages of analysis, appendices, and exhibits. Appx2115-2116. The expert depositions were thorough. In that span of eight months, the experts' interpretations of key claim

terms were exhaustively explored. Yet, ATEN never made a follow-up request for clarification on any claim term.

Mr. Dezmelyk's specifically laid out his opinion of claim terms in his January 16, 2017 expert report: Appx6734-6735. Mr. Dezmelyk opined "that in view of the prior art the asserted claims would be invalid under Aten's and Dr. Lavian's infringement analyses and claim constructions that departs from the Court's adopted constructions and constructions that a POSITA would apply." Appx6792.

His report further explained that Dr. Lavian's interpretation of various claim limitations are "inconsistent with what a POSITA would consider the plain and ordinary meaning." Appx6786; Appx6758; Appx6760; Appx6771-Appx6776; Appx6779-6785. With regard to the validity of the '141 patent, Mr. Dezmelyk's expert report concludes, "[t]herefore, under Dr. Lavian's present infringement and claim construction analysis of the claims of the '141 patent, it is my opinion that these claims are invalid." Appx6795. Mr. Dezmelyk's trial testimony did not deviate from his position in his expert report. Knowing that Mr. Dezmelyk disagreed with Dr. Lavian's interpretation of the plain and ordinary meaning, ATEN did not request additional claim construction. ATEN specifically requested that there should ***not*** be any construction for "disconnecting," and never asked the district court to construe "detecting." Appx1871; Appx1878-1880.

At the pre-trial conference stage, Uniclass reiterated its position, stating "if the Asserted Claims are applied as broadly as Aten now asserts in its infringement theories and contentions, the Asserted Claims are invalid in view of the prior art as both anticipated and obvious." Appx9861. During Mr. Dezmelyk's testimony at trial ATEN made no objection. After the completion of Mr. Dezmelyk's testimony, the district court alerted the parties that the proposed jury instructions listed the construction for some of the terms the court had construed. The district court then provided the parties with an additional opportunity to review the instructions and propose any modifications, including to claim construction, the next day. Appx9306-9307 at 180:14-181:3. ATEN passed on this opportunity and did not ask the Court to clarify any other term. Appx9369 at 7:19-22. ATEN's failure to raise this issue when an opportunity was presented gives ample reason to find waiver.

### D. "Dueling Claim Constructions"

What ATEN styles as "dueling claim constructions" is an overstatement of Mr. Dezmelyk's opinion about his interpretation of the terms to a person of ordinary skill in the art. ATEN obscures that reality that Mr. Dezmelyk was opining that under ATEN's broad infringement theory, its interpretation of the terms necessitated a finding of invalidity. And, under Mr. Dezmelyk's non-infringement theory, the interpretation of terms would result in finding the patents valid, but non-infringed. Appx9-10. The district court was within its discretion to allow the Mr. Dezmelyk to

present this straddle to the Jury. That testimony did not prejudice ATEN, because nothing precluded the Jury from accepting or rejecting parts of both experts' testimony. Further, nothing precluded the jury from drawing reasonable inferences and coming to its own conclusions.

### E. ATEN's Partially Denied Motion for JMOL

ATEN moved for JMOL, seeking, *inter alia*, judgments in its favor, or alternatively a new trial, to overturn the Jury's verdict of invalidity of the '141 patent, and noninfringement of the '141 and '289 patents. The district court denied ATEN's motion on these issues. Appx1-13.

As to anticipation of the '141 patent, the district court sustained the Jury's invalidity verdict because, based on the testimony of Mr. Dezmelyk, "the jury could reasonably conclude . . . that the firmware Dezmelyk tested predated the '141 Patent's critical date." Appx4. The district court emphasized that "the CS-1762 device is ATEN's" and that ATEN failed "to rebut Dezmelyk's testimony at trial with evidence of a particular date for the firmware update." Appx4[2].

In denying JMOL of infringement or a new trial, the district court was guided by the fact "Plaintiff bore the burden of proving infringement." Appx8; *see also Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1367 (Fed. Cir. 2004). The district

[2] In view of this ruling, the district court declined to substantively address the sufficiency of evidence under the GB '540 theory, finding the issue mooted. Appx5.

court found that ATEN's complaint of likely jury confusion due to Mr. Dezmelyk's testimony on multiple claim constructions "first and foremost supports an argument that Plaintiff failed to meet that burden." *Id.* The district court concluded that the "the jury was free to reject Plaintiff's proffered evidence and testimony of infringement," because ATEN made no "affirmative showing that its evidence 'compels' a finding of infringement." *Id.* The district court also held that ATEN had waived its right to contest Mr. Dezmelyk's claim interpretation testimony because ATEN failed "to raise concerns regarding the proper construction of claim terms at trial itself," or at any other point. Appx9-10.

In response to ATEN's JMOL position that Mr. Dezmelyk had testified that noninfringement and invalidity of the '141 patent were mutually exclusive, the district court reconciled the special verdict form, finding that a reasonable jury could have "credited Dezmelyk's testimony that the Accused Products continuously emulate and thus the 'starting emulating' . . . limitation is not met." Appx12.

### F. Uniclass's Motion for Summary Judgment on Lost Profits

Uniclass sells accused KVM switches primarily in the original equipment manufacturer ("OEM") market. Appx4491 at ¶ 3. Uniclass was established in 1995 and is located in Taiwan. Appx4503 at ¶ 58. Uniclass promotes on its website that it "has built a long-term reputation [i]n the cabling market as a company specialized in providing up-to-date network cabling solutions with excellent quality and

competitive price[s].” Appx4503 at ¶ 59. Uniclass also states that it is committed “to a total KVM Switch solution for all range of customers” and its “product lines have grown into a rich array of cost-effective computer/server management solutions.” Appx4503 at ¶ 61. Uniclass Taiwan expects “to take a technology-leading role in the KVM switch and remote network management solution market” with its “experienced R&D team . . . developing state-of-the-art remote server control/management solution[s].” Appx4503 at ¶ 62.

The parties agree that “[i]n this case, the market at issue is the OEM market for KVM switches in the U.S.” Appx4765 at ¶ 56. In this OEM market, KVM switch customers (such as Airlink, Broadtech, and Black Box) buy KVM switches manufactured by OEMs (such as Uniclass) and then distribute and sell these KVM switches to other distributors or end consumers under the customer’s own brand name. Appx4491 at ¶ 4. Importantly, Uniclass and ATEN are not the only KVM switch manufacturers that compete in the KVM switch OEM market in the United States. Uniclass has identified many KVM switch manufacturers that compete with ATEN and Uniclass in the KVM switch OEM market. The head of ATEN’s OEM department, testified that ATEN’s competitors in the United States for ATEN branded KVM switches include Uniclass and Uniclass customers Black Box, Trendnet [Trendware], and StarTech. Appx4993 at ¶ 14. He also testified that ATEN considers Belkin and Avocent, which merged with Emerson, as competitors in the

United States KVM switch market. Appx4493 at ¶ 15. ATEN has described the overall KVM market as having "[i]ntense competition." Appx7712 at ¶ 16. ATEN's 2012, 2013, and 2014 annual reports included a similar paragraph. Appx4494 at ¶ 17.

ATEN's damages expert, Mr. Jeffrey Snell, concedes that there are competitors in addition to ATEN and Defendants in the KVM switch market in the United States. ATEN's expert stated that he has "not been able to identify market share data that would allow me to estimate the portion of sales that ATEN would have made." Appx7772 at ¶ 56. ATEN has echoed the problems associated with determining market share in its 2015 annual report: "[w]hen seeking to calculate market share, it can be difficult to find an objective basis for comparison." Appx4493 at ¶ 11. The lack of market share information for the KVM switch OEM market in the United States does not absolve ATEN of the responsibility of the analysis. ATEN never provided any evidence either before or during trial showing the portion of KVM switch sales it would have made "but for" Uniclass's accused KVM switches sales.

## SUMMARY OF ARGUMENT

Uniclass asks the Court to affirm the district court's denial of JMOL on the Jury's '141 patent invalidity verdict. It also asks the Court to affirm the district court's denial of JMOL of infringement of the '141 and '289 patents, and contends

that the district court did not abuse its discretion in denying a new trial on the same. Finally, Uniclass asks this Court to affirm the district court's grant of summary judgment on lost profits.

Uniclass's technical expert, Mr. Dezmelyk, testified that ATEN's CS-1762 device anticipated the '141 patent based on the teachings in the product manual, which was dated well before the critical date and corroborated by ATEN's CEO. Mr. Dezmelyk also tested a CS-1762 device with firmware that predated the critical date to confirm the teachings of the manual and bridge the limitations. Mr. Dezmelyk's testimony that the firmware he tested predated the critical date is corroborated by his research of the firmware release date history for ATEN's old website. ATEN, who manufactures this product and created the product manual, offered no testimony to refute this. Mr. Dezmelyk's anticipation testimony as to the GB '540, as presented in the context of multiple patents, was clear and convincing and presents an alternative ground for the Jury's finding of anticipation.

Regarding both the '141 and '289 patents, Mr. Dezmelyk testified that ATEN's application of the claim terms plain and ordinary meaning were inconsistent between its infringement and invalidity positions. ATEN did not raise any objection, move to strike, or seek any clarifying instruction as to claim construction at any time. ATEN has now waived its right to make this argument because it failed to raise any issue after it received Mr. Dezmelyk's report, in its pre-trial *Daubert* motion, in the

preliminary jury instructions, during Mr. Dezmelyk's testimony, after Mr. Dezmelyk's testimony, or in the final jury instructions.

It was not until after all Mr. Dezmelyk's testimony that ATEN presented a "post-testifying *Daubert* . . . ***as to invalidity***," with no objection as to Mr. Dezmelyk's infringement testimony and no request for a clarifying instruction. The district court appropriately denied ATEN's request for a new trial and found that ATEN had waived this argument. The Jury's "twin verdicts" of invalidity and noninfringement of the '141 patent are reasonably reconciled because the Jury could have adopted ATEN's claim interpretation to find that the '141 patent was invalid, but also credited Mr. Dezmelyk's testimony that the accused products do not "start emulating."

ATEN was unable to meet its burden at trial to prove infringement of either the '141 or '289 patent. In coming to that verdict, the Jury was free to disbelieve some or all of Dr. Lavian's testimony., Dr. Lavian testified on direct examination that he had tested certain accused products that allegedly infringed the '141 and '289 patents. Later, on cross examination, he admitted that he had either tested the incorrect products, or had not tested the accused products at all. Dr. Lavian spent many days testifying about complicated and unfamiliar technology that has its own vocabulary. This testimony included an extensive discussion of source code. Dr. Lavian later admitted that he did not need source code at all to reach his opinion. Dr.

Lavian's testimony as to the terms "connected" and "detecting" was confusing and contradictory. Uniclass also provided rebuttal noninfringement testimony for the '141 and '289 patents that demonstrated substantial evidence to support the Jury's verdict of noninfringement.

The district court's ruling granting summary judgment on lost profits should not be reversed. The decision centered on ATEN's failure to conduct any market analysis that would enable it to justify the claim that "but for" the infringement it would have made Uniclass's sales. ATEN's damages expert candidly admitted that he conducted no such analysis because he had "not been able to identify market share data that would allow [him] to estimate the portion of sales that ATEN would have made." Instead, he relied on statements from a single ATEN executive that ATEN and Uniclass were the "dominant" suppliers and that the products ATEN was selling were sufficiently similar that they could be "mapped" to each other and swapped in the marketplace. ATEN's failure to assess the market and account for plentiful competitors undercut any possible "but for" causation theory and led to dismissal of lost profits before trial. Uniclass presented alternative arguments under *Panduit* that the Court did not need to address once it granted summary judgment on the first basis.

## STANDARD OF REVIEW

This Court reviews "denials of motions for JMOL and motions for new trial under the law of the regional circuit—here, the Ninth Circuit. The Ninth Circuit reviews denials of JMOL de novo." *TVIIM, LLC v. McAfee, Inc.*, 851 F.3d 1356, 1362 (Fed. Cir. 2017) (internal citations omitted).

"In the Ninth Circuit, the district court grants JMOL when the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict. A district court must uphold a jury's verdict if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008) (citations and internal quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1000 (9th Cir. 2008) (quotation marks and citation omitted). "The evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." *S.E.C. v. Todd*, 642 F.3d 1207, 1215 (9th Cir. 2011). The Court "must disregard all evidence favorable to the moving party that the jury is not required to believe, and may not substitute its view of the evidence for that of the jury." *Johnson v. Paradise Valley Unified Sch. Dist.*,

251 F.3d 1222, 1227 (9th Cir. 2001). "[T]he jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion." *Lavender v. Kurn,* 327 U.S. 645, 653 (1946).

"The Ninth Circuit reviews the denial of a motion for new trial for abuse of discretion. It reverses the denial only if the record lacks any evidence supporting the verdict or if the district court makes a mistake of law." *TVIIM, LLC*, 851 F.3d at 1362 (internal citations omitted). "An abuse of discretion is a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found." *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993) (internal quotation marks and citation omitted). Reversal is only proper if the court is "convinced firmly that the reviewed decision lies beyond the pale of reasonable justification under the circumstances." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 953 (9th Cir. 2011) (internal quotation marks and citation omitted).

"Courts have a duty under the Seventh Amendment to harmonize a jury's special verdict answers, if such be possible under a fair reading of them." *Flores v. City of Westminster*, 873 F.3d 739, 755 (9th Cir. 2017) (internal quotation marks omitted.) "A new trial should be granted only in the case of fatal inconsistency" and "the court must view the case in any reasonable way that makes the verdicts consistent." *Id.* (internal quotation marks and citations omitted.)

Whether a claim is anticipated is a question of fact, as is the question of infringement. *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1330, 1335 (Fed. Cir. 2009). "Whether a reference was published [sold, or otherwise publicly available] prior to the critical date, and is therefore prior art, is a question of law based on underlying fact questions." *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 (Fed. Cir. 2004).

"This court reviews without deference a district court's grant of summary judgment, reapplying the same standard as the district court." *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1121 (Fed. Cir. 2003). That review requires this Court to "decide[] for itself whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.* (citing Fed. R. Civ. P. 56(c)).

## ARGUMENT

### I. THE JURY'S INVALIDITY VERDICT OF THE '141 PATENT IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

#### A. There is substantial evidence that ATEN's CS-1762 device antedates the critical date.

"A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002).

"The evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." *S.E.C.*, 642 F.3d at 1215.

At trial, Uniclass presented ATEN's own CS-1762 device as invalidating prior art to ATEN's '141 patent. The manual for the CS-1762 device was dated June 4, 2004. Appx 8414 at 3:4-9; Appx9303 at 177:4-11, 15-22. This manual predated the July 24, 2006 critical date of the '141 patent by over two years. Appx9302-9303 at 176:22-177:3. Dezmelyk testified that this prior art manual disclosed all but the 1.3 and 1.4 elements of the asserted claims of the '141 patent. Appx9303-9305 at 177:8-179:11; Appx9307-9311 at 181:10-185:7; Appx9337-9338 at 211:4-212:1. To establish the missing elements, Mr. Dezmelyk testified that he tested an actual CS-1762 device that had firmware that was released in 2006 before the critical date of the '141 patent. Appx9311-9316 at 185:8-190:13; Appx9338 at 212:2-17. Mr. Dezmelyk testified that he understood how prior art worked (Appx9307 at 181:15-24), what the critical date of the '141 patent was (Appx9302-9303 at 176:22-177:3), and the process by which he determined the date for the firmware release (Appx9313 at 187:14-17, Appx9338 at 212:10-17). He testified that he researched the date of the firmware release based on an online tool used to gather information from

ATEN's website about the dates of its previous firmware release.[3] Although Mr. Dezmelyk did not specify a month, it is clear that he testified that it was before July 27, 2006.

This corroborating testimony is sufficient to support the Jury's conclusion that the CS-1762 device pre-dated the '141 patent, particularly on appeal when viewed in the light most favorable to Uniclass and with all reasonable inferences drawn in Uniclass's favor. *S.E.C.*, 642 F.3d at 1215. Additionally, Mr. Dezmelyk's physical testing using the early firmware confirmed the presence of the remaining limitations of the '141 patent. Appx9311-9317 at 185:8-191:25. This evidence is sufficient to support the Jury's finding of invalidity of the '141 patent. While it may be possible to draw a contrary conclusion, that does not entitle ATEN to JMOL. *Pavao*, 307 F.3d at 918.

ATEN does not dispute that it manufactured the CS-1762 device and was responsible for the product manual. The district court stated that it was "noteworthy" that ATEN failed to rebut his statements with evidence of a specific date for its own firmware update. Appx4. ATEN's silence on this allegation gives credence to Mr.

[3] Although not offered to the Jury, Uniclass's Trial Exhibit 1758 shows Mr. Dezmelyk's research regarding the release date of the the CS-1762 firmware version that he tested (v1.4.132). Appx7988. The information confirms that the firmware was released on July 4, 2006, several weeks before the critical date of the '141 patent. Appx9313 at 187:11-17. ATEN was provided with this exhibit before trial and only objected to the document on the basis that it was in Chinese, as it had originated on ATEN's own website. *Id.*

Dezmelyk's testimony that the firmware predated the critical date of the '141 patent. ATEN has never claimed that it didn't publish the firmware for the CS-1762 device relied upon by Mr. Dezmelyk before the critical date, even when Kevin Chen, ATEN's CEO and corporate representative and inventor of the asserted patents, took the stand at trial. ATEN's failure to produce rebuttal evidence weighs against its argument.

Finally, Mr. Dezmelyk's testimony regarding the CS-1762's anticipation of claim 8 is sufficient, particularly considering his extensive analysis regarding claim 1, the independent claim from which claim 8 depends. Appx9302-9305 at 176:14-179:11; Appx9307-9316 at 181:10-190:3. Mr. Dezmelyk testified that his claim 8 opinion was also based on Dr. Lavian's analysis. Appx9311 at 185:1-3.

### B. <u>There is substantial evidence that the GB '540 anticipates the '141 patent.</u>

The district court found that there is substantial evidence in the record for the Jury to have concluded that ATEN's CS-1762 device is invalidating prior art to the '141 patent without addressing Uniclass's second anticipatory reference, GB '540. Appx4-5. In the Ninth Circuit, "where there are two alternative factual theories which might support the verdict, the verdict will be upheld if there is sufficient evidence to support either theory." *Baumler v. State Farm Mut. Auto. Ins. Co.*, 493 F.2d 130, 134 (9th Cir. 1974).

ATEN argues that Mr. Dezmelyk didn't testify to the GB '540's capabilities in a manner sufficient to support the Jury's verdict of invalidity. APB at 32-34. To avoid redundancy, Mr. Dezmelyk explained that the GB '540 discloses "emulating one or more of the console devices" in the context of the invalidity of ATEN's other asserted patents. Appx9296 at 170:9-20, Appx9301-9302 at 175:20-176:6; Appx9285-9286 at 159:16-160:18. Mr. Dezmelyk also testified regarding the GB '540's hot-key functionality and other disclosures in the prior art reference. Appx9300-9301 at 174:13-175:19. Mr. Dezmelyk's testimony of what the GB '540 discloses concerning emulation is equally applicable to his opinions of the '141 patent and supports the Jury's verdict. ATEN ignored this point on cross examination. Moreover, the Jury heard ATEN's expert, Dr. Lavian, explicitly concede on cross-examination that the GB '540's Cypress chip implements the claimed "host emulator function," meeting that element. Appx9517-9518 at 155:14-156:1.

After hearing the testimony regarding the GB '540's teachings, the Jury, during deliberations, specifically requested a copy of the GB '540 to verify what it had heard. Appx7948. Armed with a sufficient legal and factual basis, the Jury found that Uniclass had proven by clear and convincing evidence that the '141 patent was invalid.

ATEN chose to ask Mr. Dezmelyk only one substantive question about the GB ’540 and it didn’t go to Mr. Dezmelyk’s underlying facts or data. Appx9339 at 213:4-7; *see also* Fed. R. Evid. 705. In light of Mr. Dezmelyk’s testimony regarding anticipating references to the ’141 patent, the limited cross-examination regarding the GB ’540, no contrary evidence regarding the GB ’540, the Jury’s review of the prior art reference itself in light of the jury instructions, and Fed. R. Evid. 705, there was more than enough evidence to support the Jury’s conclusion that the ’141 patent was anticipated by the GB ’540.

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DENYING ATEN’S REQUEST FOR A NEW TRIAL BASED ON MR. DEZMELYK’S ORDINARY MEANING TESTIMONY.

“The district court [is] in the best position to judge the sufficiency of the Rule 50(a) motion.” *Gaus v. Conair Corp.*, 363 F.3d 1284, 1287 (Fed. Cir. 2004). The district court here found that ATEN’s post-testimony *Daubert* motion on ***invalidity*** was not an objection to Mr. Dezmelyk’s testimony regarding ***noninfringement*** oand did not adequately form the basis for ATEN’s Rule 50(b) motion. Appx9. Moreover, the district court determined that ATEN’s motion to exclude Mr. Dezmelyk’s testimony under *Daubert* based on his methodology or underlying data was not the same as affirmatively requesting a clarifying instruction to the Jury as to claim scope. “In other words, Plaintiff did not object to Dezmelyk’s testimony regarding non-

infringement. Nor did Plaintiff seek clarification of claim scope or claim construction from the Court." Appx9.

### A. ATEN waived its right to bring arguments regarding Mr. Dezmelyk's ordinary meaning testimony.

ATEN waived the complaints it now raises on appeal. It was not until the last day of trial that ATEN moved for a post-testifying *Daubert* motion. Appx9357-9358 at 231:23-232:1. This motion, and the subsequent argument, were limited to Mr. Dezmelyk's invalidity testimony and did not "fairly put [the district court] on notice as to the substance of the issue[s]" that it now raises on appeal. *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469 (2000); *Norsk Hydro Canada, Inc. v. United States*, 472 F.3d 1347, 1359 (Fed. Cir. 2006). The district court properly reasoned that "[f]or a party to say they've adequately raised a claim construction issue by implying it for the first time in a Rule 50(a) motion on the final day of an eight day jury trial is unpersuasive." Appx1, citing *LifeNet Health v. LifeCell Corp.*, 837 F.3d 1316, 1322 (Fed. Cir. 2016) ("Here, in light of LifeCell's failure to sufficiently request further construction of the relevant limitation leading up to and during trial, we find that it fails to properly raise an O2 Micro issue.").

ATEN's late, first-time objection highlights that it had repeatedly and decidedly abandoned any complaint to the experts' differences of opinion as to the meaning of the terms "detecting"/"occupied" ('289 patent) and "connect"/"disconnect" ('141 patent) at each stage of the litigation where it could

have properly raised the issue. At claim construction, neither party argued for a construction of "detecting"/"occupied." Regarding "connect"/"disconnect," ATEN successfully argued that a construction was not necessary and that the plain and ordinary meaning should apply. Appx1878-1880.

Thereafter, the parties prepared extensive expert reports on infringement and validity. ATEN alone submitted three expert reports totaling more than six thousand pages of analysis, appendices, and exhibits. Appx2115-2116. The expert depositions were thorough. In a span of eight months, the experts' interpretations of key claim terms were exhaustively explored. Yet, in all that briefing, ATEN never made a follow-up request for clarification on any claim term.

Mr. Dezmelyk specifically laid out his opinion in his January 16, 2017 expert report:

> In some instances I describe how Dr. Lavian appears to be using an interpretation/construction other than the Court's, and present analysis of how the claim interpretations Dr. Lavian applies are inconsistent with the Court's claim constructions, or how a person of ordinary skill at the time of the invention would have interpreted the claim. In some of those instances, to indicate the incorrect nature of Dr. Lavian's claim interpretations, **I provide examples of how Dr. Lavian's claim interpretations and infringement analysis would capture the prior art within the scope of the claims.**

Appx6734-6735, emphasis added. Mr. Dezmelyk's expert report adds, "[i]t is also my opinion that in view of the prior art **the asserted claims would be invalid under Aten's and Dr. Lavian's infringement analyses and claim constructions** that

departs from the Court's adopted constructions and constructions that a POSITA would apply." Appx6792, emphasis added. Mr. Dezmelyk's opinion was that ATEN's infringement analysis appeared to be twisting and expanding the constructions given by the district court. Mr. Dezmelyk rightfully called out ATEN's inconsistencies and contradictions as he explained his own non-infringement and invalidity opinions.

Mr. Dezmelyk's expert report opines that Dr. Lavian's interpretation of various claim limitations are "inconsistent with what a POSITA would consider the plain and ordinary meaning" to be. Appx6786; Appx6758; Appx6760; Appx6771-Appx6776; Appx6779-6785. With regard to the validity of the '141 patent, Mr. Dezmelyk's expert report concludes, "[t]herefore, under Dr. Lavian's present infringement and claim construction analysis of the claims of the '141 patent, it is my opinion that these claims are invalid." Appx6795. Mr. Dezmelyk's trial testimony did not deviate from his position in his expert report. Knowing that Mr. Dezmelyk disagreed with Dr. Lavian's interpretation of the plain and ordinary meaning, ATEN did not request additional claim construction. ATEN had specifically requested that there should ***not*** be any construction for "disconnecting," and never asked the Court to construe "detecting." Appx1871; Appx1878-1880. At

the claim construction hearing, the district court stated that it was leaving the door open to construe additional terms if the parties deemed it necessary.[4]

At the pre-trial conference stage, Uniclass reiterated its position, stating "if the Asserted Claims are applied as broadly as Aten now asserts in its infringement theories and contentions, the Asserted Claims are invalid in view of the prior art as both anticipated and obvious." Appx9861. ATEN was presented with an additional opportunity to raise a construction issue with the district court.

Just before trial, ATEN submitted a *Daubert* motion to exclude Mr. Dezmelyk's testimony, but only on the bases that his underlying opinions were based on an insufficiently translated document and that his ***obviousness*** analysis was inadequate. It made no reference to Mr. Dezmelyk's anticipated testimony regarding the claim terms at issue on appeal. *See* Appx9817-9832. ATEN's fear that Mr. Dezmelyk's testimony could confuse the Jury should have at least resulted in an immediate objection on the record while Mr. Dezmelyk's was testifying at trial. Instead, ATEN made no objection and allowed the testimony to be heard by the Jury unchallenged.

ATEN's complacency was most likely due to the fact that it had fully participated in preparing the stipulated preliminary instructions that were read to the

[4] Uniclass intends to supplement the Appendix with the claim construction hearing transcript.

Jury that included all relevant claim constructions. Appx8302-8322 at 113:17-133:21. After the completion of Mr. Dezmelyk's testimony, the district court specifically alerted the parties that the proposed jury instructions listed the construction for some of the terms the court had construed. The district court then provided ATEN with yet another opportunity to review the instructions and propose any modifications, including to claim construction, the next day. Appx9306-9307 at 180:14-181:3. The court even cancelled a morning meeting to give the parties extra court time to resolve any issues. *Id.* ATEN passed on this opportunity and did not ask the Court to clarify any other term. Appx9369 at 7:19-22. ATEN's failure to raise this issue when an opportunity was presented gives ample reason to find waiver. "While the Court functions as a gatekeeper, it is the litigant's responsibility to raise issues they believe warrant gatekeeping in a timely manner at an appropriate stage in the case." *Chrimar Sys., Inc. v. Alcatel-Lucent Enter. USA Inc.*, No. 6:15-CV-00163-JDL, 2017 WL 568712, at *6 (E.D. Tex. Feb. 13, 2017).

ATEN's decision to not challenge that testimony until after the entire presentation of evidence at trial even though it had been on notice of the issue at every relevant stage, justifies a finding of waiver.

### B. ATEN was not unfairly prejudiced.

The heart of ATEN's argument is that the parties' experts gave "dueling" claim construction arguments at trial on a term that ATEN convinced the court at

claim construction should carry its plain and ordinary meaning ("connect"/ "disconnect" ('141 patent) and on an unconstrued claim term ("detecting"/ "occupied" of the '289 patent). ATEN argues that the district court abused its discretion by not construing these terms at trial when it appeared that there was a difference of expert opinion. "An abuse of discretion is a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found." *International Jensen, Inc.*, 4 F.3d at 822 (internal quotation marks and citation omitted). Reversal is only proper if the court is "convinced firmly that the reviewed decision lies beyond the pale of reasonable justification under the circumstances." *McCollough*, 637 F.3d at 953 (internal quotation marks and citation omitted).

What ATEN styles as "dueling claim constructions" overstates Mr. Dezmelyk's opinion about his interpretation of the terms to a person of ordinary skill in the art. ATEN that he was opining that under ATEN's broad infringement theory, its interpretation of the terms necessitated a finding of invalidity. And, under Mr. Dezmelyk's non-infringement theory, the interpretation of terms would result in finding the patents valid, but not infringed. Appx9-10. The district court was within its discretion to allow the Mr. Dezmelyk to present this straddle to the Jury. That testimony did not prejudice ATEN, because nothing precluded the Jury from accepting or rejecting parts of both experts' testimony. Further, nothing precluded

the jury from drawing reasonable inferences and coming to its own conclusions. *See* Appx12 ("The Court also rejects Plaintiff's argument that the jury's verdict of 1) invalidity of the '141 Patent and 2) non-infringement of the '141 Patent is a 'logical impossibility'" because the plaintiff's burden of proof on infringement, *i.e.*, establishing the existence of every element, is different than the defendants' burden to show invalidity.).

The district court did not abuse its discretion by allowing Mr. Dezmelyk's testimony to stand, because the experts, counsel, and the court were clear to the Jury that there is only one governing claim construction set forth in the jury instructions that were read word for word to the Jury. The Jury was instructed that it should apply the district court's construction and no other. There is no reason to believe that the Jury did not apply the jury instructions when filling out the special jury verdict form. Appx11-12.

The parties provided the district court with stipulated jury instructions that included claim constructions. The instructions and claim constructions were read to the Jury members and they were told to follow the instructions. Appx8302-8322 at 113:17-133:21. During trial, the parties had additional opportunities to refine the jury instructions, particularly with regard to claim construction.

The experts were asked whether they were aware of governing claim constructions. Mr. Dezmelyk explicitly answered "yes" that he was "familiar with

the Court's claim constructions in this matter." He agreed that he "appl[ied] those in [his] infringement analysis." Appx9167 at 41:2-8. Mr. Dezmelyk stated: "You have to use the claim construction. In other words, you have to apply the same claim constructions that were applied in the infringement analysis to an invalidity analysis." Appx9263 at 137:15-22. These statements reinforced to the Jury the importance of applying, and not departing from, the district court's constructions.

To the extent that ATEN believed the Jury needed further clarity in weighing Mr. Dezmelyk's opinion, ATEN itself dispelled any potential confusion in its closing argument:

> Now, for the other ATEN patents, he again is trying to confuse you. He testified about what he thinks ATEN's claim constructions are in order to offer opinions on invalidity under those interpretations. But as you heard in the jury instructions the judge gave you which were very clear, there is only one claim construction in this case, and that comes from the Court, not from Mr. Dezmelyk. Again, trying to confuse you.

Appx9579 at 217:9-16. From Uniclass's perspective, ATEN's statements were prejudicial in coloring and accusing Mr. Dezmelyk of trying to confuse the jury. ATEN's closing statements were uninterrupted and the Jury had every reason to rely on what was said. The district court likewise instructed the Jury that other than the specific claim constructions given in the jury instructions, the jury was to give other terms "their common meaning." Appx9543 at 181:23-25.

### C. <u>The Jury's reconcilable special verdicts on the '141 patent do not warrant a new trial.</u>

The district court's denial of a new trial based on the Jury's verdict that the '141 patent was invalid and noninfringed should not be overturned. "[W]here there are two alternative factual theories which might support the verdict, the verdict will be upheld if there is sufficient evidence to support either theory." *Baumler*, 493 F.2d at 134. The task of weighing conflicting evidence and making credibility determinations is the job of the jury and not the court. *Lucent Techs. Inc. v. Microsoft Corp.*, 287 F. Supp. 2d 1107, 1126 (S.D. Cal. 2011). Thus, courts will grant motions for a new trial only when the court has given full respect to the jury's findings, but is left with the firm conviction that a mistake has been made. *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371–72 (9th Cir. 1987); *see also Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 510 n. 15 (9th Cir. 2000). "We have found no Supreme Court or Ninth Circuit cases in which an appellate court has directed the trial court to grant a new trial due to inconsistencies between general verdicts, and Ninth Circuit precedent dictates that we cannot do so." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003).

The Jury was entitled to rely on Mr. Dezmelyk's testimony, employing ATEN's interpretation of the terms to find the patent invalid. "The Federal Circuit has condoned the testimony of an expert who 'mapped each element of the asserted

claims to the functionality of [a prior art reference] in a manner that mirrored [the other side's] infringement theory.'" *Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1335 (Fed. Cir. 2011)." Appx9-10; *see Nobelbiz, Inc. v. Glob. Connect, L.L.C.*, No. 6:12-CV-244, 2015 WL 11089488, at *3 (E.D. Tex. July 16, 2015); *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 943 (N.D. Cal. 2015).

The Jury was similarly entitled to rely on Mr. Dezmelyk's testimony that by employing his interpretation of the terms, the patent was not infringed. The district court identified Mr. Dezmelyk's statement repeated by ATEN on appeal:

> Plaintiff's argument that the verdict is inconsistent places heavy emphasis on this single statement from an expert when the parties spent significant time and effort presenting their positions as to infringement and invalidity at trial. It also ignores the fact that the same party does not bear the burden of proof for both infringement and invalidity.

Appx12. The district court found that even if the Jury did consider Mr. Dezmelyk's "claim construction," it rejected it in finding invalidity. *Id*. In the district court's estimation, it and the Jury understood Mr. Dezmelyk to be speaking about claim interpretation to a person of ordinary skill. However, even if there were confusion in the Jury's mind on this front, it could have reasonably found non-infringement because an essential element of the '141 patent was missing in the Accused Products. "The jury still could have reasonably credited Dezmelyk's testimony that the Accused Products continuously emulate and thus the 'starting emulating the input

device to the first host' (after disconnecting the input device) limitation is not met." Appx12, citing Appx9237-9238 at 111:14-112:3 ("The way these devices work is they always emulate. . . . So there is never those steps of . . . emulating sometimes and not emulating other times.").). Thus, to the extent that the Jury's finding that the '141 patent was invalid and not infringed might have been inconsistent, the district court fulfilled its "duty to reconcile the jury's special verdict responses on any reasonable theory consistent with the evidence." *Pierce v. S. Pac. Transp. Co.*, 823 F.2d 1366, 1370 (9th Cir. 1987). Lastly, once the Jury made a finding of invalidity (assumedly accepting ATEN's interpretation), it was proper for it to find non-infringement. "[I]t is axiomatic that one cannot infringe an invalid patent." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1925 (2015).

### D. The Jury's reasonable verdict of non-infringement of the '289 patent.

The district court understood that as opposed to providing claim constructions, "both parties' experts testified to their understanding of the plain and ordinary meaning of these terms." Appx9. The court observed that the '289 patent relies on many "technical words or phrases not commonly understood." Appx11 (quoting *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015).). "Of course, a court need not attempt the impossible task of resolving all questions of meaning with absolute, univocal finality." *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1318 (Fed. Cir. 2016). Notably, neither party sought claim construction

of the term "detecting"/ "occupied." *Id.* at 1319 ("[A] district court's duty at the claim construction stage is, simply, the one that we described in *O2 Micro* and many times before: to resolve a dispute about claim scope that has been raised by the parties."). At issue now is whether the interpretation by the experts of the plain and ordinary meaning results in a necessary finding of infringement. "Indeed, we noted in *O2 Micro* that there are limits to the court's duties at claim construction stage. For example, courts should not resolve questions that do not go to claim scope, but instead go to infringement, [], or improper attorney argument []." *Id*. (internal citations omitted).

The court and the Jury heard the opposing testimony of the experts "as to the proper interpretation of the term 'occupied.'" *Id*. Mr. Dezmelyk "explained his argument that a person of skill in the art would understand 'occupation' to refer to physical occupation and his further explanation that 'the Prima T device never looks at whether there's actually a cable in the port. It simply waits for messages from the other device.'" Appx9230 at 105:14-16. The court found that this testimony was sufficiently clear that substantial evidence supports the jury's finding, and that the jury could disregard or discredit ATEN's expert's testimony for a variety of reasons including lack of credibility. *Id*.

## III. THE JURY'S NONINFRINGEMENT VERDICTS ARE SUPPORTED BY SUBSTANTIAL EVIDENCE.

### E. ATEN is not entitled to JMOL of infringement of the '141 patent.

#### *1. ATEN did not meet its burden to prove infringement of the '141 patent.*

As the district court observed, "[a] critical point colors the Court's review of Plaintiff's JMOL infringement arguments: it is Plaintiff's burden, by a preponderance of the evidence, to prove infringement at trial." Appx8, citing *Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005). The Jury's verdict is a finding that ATEN did not meet that burden. In coming to that conclusion, the Jury was free to disregard ATEN's evidence and testimony. *Lavender*, 327 U.S. at 653. The standard for a party seeking JMOL on an issue for which it bore the burden of proof at trial is exceptionally high. "Courts grant JMOL for the party bearing the burden of proof only in ***extreme*** cases, when the party bearing the burden of proof has established its case by evidence that the jury would not be at liberty to disbelieve and the only reasonable conclusion is in its favor." *Mentor H/S, Inc. v. Med. Device All., Inc.*, 244 F.3d 1365, 1375 (Fed. Cir. 2001); *see also Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1065 (Fed. Cir. 1998).

ATEN insists that no reasonable jury could have come to any conclusion other than that Uniclass infringed. However, ATEN provides no authority that would restrict the Jury's ability to weigh the credibility and merit of the evidence in any

reasonable way. Simply put, ATEN's evidence was not so persuasive as to prevent the Jury from coming to its conclusion. There are several reasonable bases on which the Jury could have rejected ATEN's evidence and testimony.

First, ATEN only provided expert opinion as to infringement and chose not to introduce testing or demonstration of any of the accused products to the Jury. Each of the accused products was in the courtroom during the duration of the trial and had been designated as an exhibit. Appx7977-7982; Appx7988; Appx7994. Instead of demonstrating the actual products, Dr. Lavian provided unsupported opinion testimony about the capabilities of accused products that he eventually admitted he had never inspected. Appx8756-8769 at 42:13-55:1.

Second, Dr. Lavian's testimony also fell short of being evidence that ***must*** be believed. At trial, Dr. Lavian was caught in multiple contradictions and provided confusing testimony regarding claim scope and product functionality. For instance, with respect to the '141 patent, Dr. Lavian gave conflicting testimony that "emulated" means both "connected" ***and*** "disconnected." *Compare* Appx8838 at 49:15-24 *with* Appx9524 at 62:7-12. Dr. Lavian also testified that he didn't "need to look at source code at all to make [his] opinions," but then spent the majority of his testimony discussing source code. Appx8482 at 71:20-24.

Third, ATEN tried to prove broad allegations in limited trial time. ATEN attempted to explain that dozens of products infringed thirty-four claims from four

patents. The technology at issue was not intuitive and required long, tedious expert testimony and hundreds of PowerPoint slides to explain. Dr. Lavian testified that it took "several hours" to explain all of the elements at a "high level." Appx8840 at 51:16-19. ATEN's expansive strategy contributed to its failure to provide persuasive testimony on any specific allegation. While ATEN may be able to now cherry-pick discrete sections of testimony that may support its position, the Jury was certainly "at liberty to disbelieve" that testimony, particularly when viewed in context. This Court must also discard all evidence favorable to ATEN that the Jury was not required to believe and look only for "relevant evidence as reasonable minds might accept as adequate to support [the jury's] conclusion." *Hagen v. City of Eugene*, 736 F.3d 1251, 1256 (9th Cir. 2013) (internal citations omitted); *Pavao*, 307 F.3d at 918.

#### 2. *Uniclass's decision not to rebut certain testimony does not entitle ATEN to JMOL on a claim for which it carried the burden of proof.*

Unable to meet its own burden, ATEN attempts to overturn the Jury verdict based on alleged deficiencies in *Uniclass's* evidence. These arguments "turn the burden of proof on its head and are insufficient to overturn the jury's verdict" and would allow ATEN to secure a judgment without meeting its own evidentiary burden, depriving Uniclass of its Seventh Amendment right to a jury verdict. Appx8; *see Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1105 (Fed. Cir. 2003); *see also* Advisory Comm. Notes to the 2006 Amendments, Fed. R. Civ. P. 50 ("This

fulfillment of the functional needs that underlie present Fed. R. Civ. P. 50(b) also satisfies the Seventh Amendment.")

Even if Uniclass failed to rebut certain elements of Dr. Lavian's testimony, that does not concede those elements and a reasonable Jury could still reject Dr. Lavian's testimony on those topics. "[I]t is the jury's exclusive function to weigh the credibility of witnesses, resolve evidentiary conflicts and draw reasonable inferences from proven facts." *United States v. Young*, 573 F.2d 1137, 1139 (9th Cir. 1978). That principle was reiterated in the Jury instructions approved by all parties: "[i]n deciding the facts of this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says ***or part of it or none of it***." Appx9533 at 171:17-19 (emphasis added). The jury instructions continued, "[expert] opinion testimony should be judged like any other testimony. You may accept it ***or reject it and give it as much weight as you think it deserves*** considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case." Appx9535 at 173:3-7 (emphasis added). The district court listed many factors that could influence the weight that the Jury placed on any particular testimony. Appx9533-9534 at 171:20-172:10. These Jury instructions were also repeated at the beginning of the trial. Appx8317-8319 at 128:8-130:12. There is no evidence that the Jury failed to follow these instructions in weighing the weight and credibility of the evidence to come to their verdict. It is

also inappropriate for the Court to now substitute its own views on how credible the witnesses were and how the evidence should be weighed. *Johnson*, 251 F.3d at 1227.

ATEN suggests that "[t]aken to its logical conclusion, the district court's holding would virtually always preclude JMOL of infringement." APB[5] at 47-48. ATEN is not far off. "Courts grant JMOL for the party bearing the burden of proof only in ***extreme*** cases, when the party bearing the burden of proof has established its case by evidence that the jury would not be at liberty to disbelieve and the only reasonable conclusion is in its favor." *Mentor H/S, Inc.*, 244 F.3d at 1375. ATEN cites several Federal Circuit cases where JMOL of infringement was found to be appropriate. However, each of those cases involved a different caliber of evidence than the mere opinion testimony presented by Dr. Lavian. For instance, in *Nobelpharma AB*, 141 F.3d at 1065, the Federal Circuit held that the jury would not be at liberty to disbelieve the co-inventor's concessions. No such evidence exists in this case.

In *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1333 (Fed. Cir. 2013), the Federal Circuit affirmed the district court's grant of JMOL regarding infringement because "[t]he record, especially the intrinsic evidence of the patent's meaning, does not support [defendants] argument," because defendants' expert made specific concessions, and because defendants failed to cross-examine the

[5] "APB" refers to ATEN's Principal Brief.

plaintiff's expert on various elements. Unlike in *Broadcom*, Uniclass provided specific rebuttal testimony on various elements that form a reasonable basis for the Jury's verdict of noninfringement.

In *ParkerVision, Inc. v. Qualcomm Inc.*, 621 F. App'x 1009, 1022 (Fed. Cir. 2015), the non-moving party "failed to point to ***any*** basis on which a reasonably jury could have rejected [the moving party's expert's invalidity opinion]" and involved JMOL as to ***invalidity*** and not infringement. (emphasis added). In *Proveris Sci. Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1266–1267 (Fed. Cir. 2008), JMOL was granted when the non-moving party did not have ***any*** expert to provide ***any*** evidence as to noninfringement.

In summary, JMOL of infringement may be appropriate in extreme cases where the evidence was so definitive (such as when there was not any reasonable basis to reject testimony or when there was no expert at all to provide rebuttal evidence) that a reasonable jury had no choice but to believe it. *Mentor H/S, Inc.*, 244 F.3d at 1375. The evidence in this case did not rise to that lofty standard, and the Jury was within its right to discard any or all of Dr. Lavian's testimony.

#### ***3. Uniclass's explanation of "connected" is a reasonable, ordinary meaning of the term that supports the Jury's finding of nonfringement.***

Mr. Dezmelyk's explanation of the ordinary meaning of "connected" was reasonable. "[T]he language of the claim frames and ultimately resolves all issues of

claim interpretation." *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997). Here, claim 1 of the '141 patent requires "**disconnecting** the input device **without connecting the input device to any other host** and starting emulating the input device to the first host." Appx33-34 at 8:67-9:3 (emphasis added). In other words, once emulation has started, the input device has been necessarily disconnected from the host and host not been connected to any other host. ATEN's attempt to frame Mr. Dezmelyk's testimony as excluding indirect connections mischaracterizes his testimony and distracts from the plain language of the claims, which indicate that emulation means that there is no longer a connection.

Mr. Dezmelyk testified that "an input device is connected to a host when it responds to requests from that host." Appx9240 at 114:4-6. Mr. Dezmelyk explained by referencing the language of the patent: "it's not connected when it's being emulated . . . because the patent teaches us that you disconnect the device and then you start emulating it." Appx 9240 at 14:16-24. He continued, "information is being passed from the input devices to the various emulators, but there's never an actual connection." Appx9242 at 116:7-9; *see also* Appx9241 at 115:18-22. The plain language of the claims themselves make it a logical impossibility to be emulating *and* connected at the same time.

On cross-examination, Dr. Lavian confirmed that the input device cannot be emulated and connected to the host computer at the same time. Appx9524-9525 at

162:18 – 163:12. He also confirmed that input devices that are being emulated "both are not connected" to host computers. Appx8864-8868 at 77:23-78:1. Ted Chen, Uniclass's head engineer, testified that the accused ADCP02A products contain the proprietary HE0077 chip which is "always emulating." Appx9085-9087 at 135:9-137:16. Mr. Dezmelyk confirmed that the accused Prima T family of products and ADCP02A family of products are always emulating and thus, never connected. Appx9252-9256 at 126:1-130:11.

Mr. Dezmelyk agreed with ATEN's counsel that typing into a keyboard in one of the accused KVM devices would go to the host. Appx9332 at 206:23-25. ATEN argues that this testimony "manifests connection" and "conclusively establishes the existence of at least an indirect connection." APB at 52-53. Mr. Dezmelyk immediately clarified that this did not mean the device was "connected," "because [the device] is not responding to polling from the host." Appx9333 at 207:1-4. However, even if Mr. Dezmelyk's testimony could be interpreted to mean that the devices were "connected" under ATEN's interpretation of the term, the Jury still could have found that the accused products didn't infringe because they continuously emulated and thus did not "start[] emulating" as required by claim 1.

Uniclass's belief that the Jury may have rejected Mr. Dezmelyk's claim interpretation testimony is a reasonable explanation for how the Jury found the '141 patent to be invalid despite Mr. Dezmelyk's testimony to the contrary. Appx9316-

9317 at 190:14-191:25. Although the Jury may have declined to accept that portion of Mr. Dezmelyk's testimony, that merely means that it was weighing the evidence as it deemed proper, and not that Mr. Dezmelyk's interpretation was "unreasonably narrow." While Uniclass finds Mr. Dezmelyk's testimony to be competent and credible, his analysis was a question of fact that the Jury should and did decide. It is inappropriate for the Court to now substitute its view of the evidence for that of the Jury. *Johnson*, 251 F.3d at 1227.

#### *4. Mr. Dezmelyk's noninfringement testimony under both interpretations provides independent support for the Jury's finding of noninfringement.*

Uniclass provided rebuttal evidence sufficient to support the Jury's finding of noninfringement of the '141 patent. Mr. Dezmelyk testified that elements 1.1 and 1.2 of the '141 patent are not present in the accused products, "because there's never that active connection. There's only ever emulation. As the patent discusses, there's a difference between – emulation is what happens when the input device is disconnected. So in this case there's never a connection of the input device itself because there's always emulation." Appx9252 at 126:12-17; Appx9252-9256 at 126:1-127:6 (Prima T), 127:25-130:2 ("A" devices).

However, even under the interpretation that ATEN adopted, element 1.3 of the '141 patent still requires "starting emulating the input device to the first host" after disconnecting the input device. Appx230-231 at 8:66-9:3. Mr. Dezmelyk

testified that "[t]he way these devices work is they ***always*** emulate. . . . once the device is powered up and running, that emulation is always there. So there's never a starting, stopping of emulation, except, of course, when you turn it on." Appx9237-9238 at 111:12-112:3. This credible, rebuttal testimony—by itself—provides an independent ground to support the Jury's noninfringement verdict and is presented under a consistent interpretation of the patent's claims. *TVIIM, LLC*, 851 F.3d at 1365.

### F. ATEN is not entitled to JMOL of infringement of the '289 patent.

#### *1. ATEN did not meet its burden to prove infringement of the '289 patent.*

Like with the '141 patent, the Jury found that ATEN failed to meet its burden to prove infringement of the '289 patent. *See supra* Section II.B. ATEN's failure to test any product, Dr. Lavian's confusing and contradictory testimony, and ATEN's overbroad contentions all justify the Jury reasonably finding that ATEN did not meet its burden. Further, the Jury could have reasonably discredited Dr. Lavian's infringement testimony because he admitted that he never tested or used the Prima T products. Appx8765-8770 at 51:3-56:21; *see also* Appx9096 at 146:9-11.

Dr. Lavian also provided illogical testimony that input devices and hosts could both be connected and disconnected at the same time. Appx8840 at 51:14-16; Appx8868 at 79:13-16. When asked direct questions about whether a device would need to ***start*** emulating when it was ***already*** emulating, Dr. Lavian evaded the

questions (Appx8865-8868 at 76:18-79:9), simply repeated the claim limitations, added fillers that it is "so simple," (Appx8865 at 76:10-17), or gave confusing opinions that existing emulation "is in the process of start" and that you would ***and*** would not need to ***start*** emulation if there were existing emulation (Appx8868 at 79:3-7, 13-16, "Both ways are fine. That's okay.") *See also* Appx8817-8821 at 28:24-32:21 (cross examination of Dr. Lavian on other elements). Dr. Lavian's complex and unclear testimony left open the reasonable conclusion that the accused products did not operate in the way that he had described.

ATEN disputes the sufficiency of Uniclass's rebuttal testimony, but that determination is irrelevant to whether ATEN independently met its burden. The bedrock role of the Jury is to weigh evidence and determine credibility of witnesses. *Young*, 573 F.2d at 1139. That duty was explained to the Jury in the jury instructions. Appx9533-9535 at 171:16-173:24. In "extreme" cases, a jury verdict may be overturned if the jury chose to discredit some evidence that was so definitive that it foreclosed any other reasonable interpretation. *Mentor H/S, Inc.*, 244 F.3d at 1375. ATEN could not meet its lower burden of persuasion at trial and it cannot meet its much higher burden now.

#### ***2. Uniclass's interpretation of "detecting whether the first port is occupied" is a reasonable, ordinary meaning.***

Mr. Dezmelyk presented a reasonable interpretation of the "detecting whether the first port is occupied" limitation that the Jury could have adopted in coming to

its verdict of noninfringement of the ’289 patent, particularly because “occupied” was never construed or asked to be construed by either party. Appx9325 at 199:10-12. He testified that to a POSITA, the plain and ordinary meaning of “detecting occupation” is to identify physical occupation of the port by a cable without necessarily detecting the flow of messages. Appx9226 at 100:3-9; Appx9223 at 97:1-10, 16-18.

In support of this interpretation, Mr. Dezmelyk relied on the specification of the ’289 patent which describes how “the status of the input port” is detected. Appx9225 at 99:6-16; Appx40 at 2:10-16; Appx41 at 4:33-48. Mr. Dezmelyk explained that the intelligent computer switch is monitoring the physical status of the port and not detecting any particular message. *Id.* He testified that “occupied” depends on physical connection rather than the receipt of messages. Appx9325-9327 at 199:21-202:10. He provided additional testimony regarding how the claimed switch sets functionalities based on the type of cable detected, rather than the type of message received through that cable. Appx9225-9226 at 99:22-100:9.

Mr. Dezmelyk’s interpretation was also based on Figure 3 in the ’289 patent, which indicates that the critical question for determining slave/master status is whether the input port is “connected a cable” and not whether any messages were received. Appx39; Appx9223-9225 at 97:20-99:5. In response, Dr. Lavian gave confusing testimony that the flow chart depicted in Figure 3 of the ’289 patent does

not require a message to determine master/slave status but that "[c]onnected is the message." Appx9518-9520 at 156:7-159:8.

### *3. There is substantial evidence to support the Jury's verdict of noninfringement of the '289 patent.*

Uniclass offered substantial evidence that the accused products did not perform all claimed elements. Mr. Dezmelyk testified that the Prima T products do not practice elements 1.4-1.8, 6.5-6.7 or 14.1-14.3 of the '289 patent "because there's no process of detecting whether the port is occupied" in the accused devices. Appx9220-9251 at 94:5-125:24. He explained "there's no process of detecting whether the port is occupied," because "the Prima T device never looks at whether there's actually a cable in the port. It simply waits for messages from the other device." Appx9231 at 105:6-11; Appx9230 104:4-16. ATEN disputes the sufficiency of this testimony. APB at 58. However, even if this testimony was wholly conclusory, its own expert opinion testimony was based on an analysis of the wrong product and could have been reasonably rejected. Appx8765-8770 at 51:3-56:22.)

ATEN's argument that it is possible that in at least *some* instances the accused Prima T may be able to detect occupation without the flow of physical messages is not supported by the evidence. APB at 57, citing Appx8577-8578 at 75:13-76:21; Appx8574-8576 at 72:19-74:15. On direct, Dr. Lavian claimed he had performed extensive testing on the Prima T8 products. Appx8483-8484 72:12-73:5. On cross, he had to admit that he had never possessed or had access to a Prima T product and

therefore could not have conducted testing as he previously testified. Appx8765-8770 at 51:3-56:21; *see also* Appx9096 at 146:9-11. Mr. Dezmelyk presented evidence that he had tested the accused Prima T products and found that they do not detect occupation. Appx9221-9222 at 95:25 – 96:23; Appx9229-9231 at 103:14-105:17. Mr. Ted Chen likewise testified that they do not detect occupation. Appx9102-9103 at 52:24-153:11.

Whether the devices detect physical occupation, how master/slave status is set, and what Mr. Chen's flow chart explains are questions of fact that the Jury was presented and presumed to have evaluated. The Jury decided those questions in favor of Uniclass and ATEN has not met its burden to disturb those findings.

## IV. SUMMARY JUDGMENT ON LOST PROFITS DAMAGES SHOULD NOT BE REVERSED.

### G. Lost profits damages must be based on "sound economic proof."

To recover lost profits, the patentee must show a reasonable probability that, "but for" the infringement, it would have made the infringer's sales. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995). The "but for" analysis involves a consideration of the market as it would have developed absent the infringing product to determine what profits the patentee would have made. *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999). "To show causation and entitlement to lost profits, a patentee must reconstruct the market to show 'likely outcomes with infringement factored out of the economic picture.'" *Id.*

Such market reconstruction, though hypothetical, requires "sound economic proof of the nature of the market." *Id.*; *see also Oiness v. Walgreen Co.*, 88 F.3d 1025, 1031 (Fed. Cir. 1996) (holding that an estimate of damages cannot be based upon "guesswork.").

This Court commonly applies the *Panduit* four-factor test to determine entitlement to lost profits, where the patentee must prove, among other things factor number (2), the absence of acceptable non-infringing substitutes. *Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1372 (Fed. Cir. 2008) (citing *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978)). Although there is not a strict method that must be followed in every lost profits case, this Court has repeatedly emphasized that the requirements for providing lost profits are rigorous and has cautioned against permitting the "but for" hypothetical inquiry to lapse into speculation. *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1293 (Fed. Cir. 2007).

### H. The district court correctly found that Mr. Snell's opinion was not based on sound economic principles because of his failure to conduct a market share analysis and properly account for other competitors.

Uniclass argued that ATEN's claim for lost profits damages fails as a matter of law for two primary reasons: (1) ATEN's damages expert failed to make an adequate market share analysis and account for competitors; and (2) ATEN cannot

satisfy the second element of *Panduit*, the absence of non-infringing substitutes. The district court found that "ATEN did not undertake a meaningful market analysis that would support a lost profits calculation" and granted summary judgment on this basis. Appx20. The district court did not reach the second independent reason for dismissing lost profits. If the district court's decision is found to be in error, the matter should be remanded for an assessment as to whether judgment as a matter of law is still appropriate for failure to meet the second *Panduit* factor. *Medina v. Brown*, 872 F.2d 429, 1989 WL 35494 (9th Cir. 1989).

ATEN argues on appeal that the district court erred in finding that Mr. Snell's opinion was overly reliant on the testimony of one ATEN executive, Mr. Chen, in assessing market share. APB at 59. ATEN then argues that Mr. Snell's failure to account for other competitors ignored his testimony that he understood from Mr. Chen that ATEN and Uniclass were the dominant suppliers, and that the market was essentially a two-supplier market. *Id*. at 62. It similarly argues that a finding that Mr. Snell used unsound economic principles (such as "mapping") should be reversed. ATEN argues that "it is particularly reasonable for a damages expert to rely on statements of a fact witness at least at the summary judgment stage" where "specific market data was lacking." *Id.* at 61. ATEN claims that determining market share is

a factual question that should have gone to the Jury. *Id*. ATEN cites to Mr. Chen's "uncontroverted trial testimony" as supportive of its positions.[6] *Id*.

ATEN's lost profits theory was that it would have captured 100% of the market (for 75% of the accused sales) "but for" Uniclass's alleged infringement.[7] However, ATEN's damages expert admittedly failed to complete an adequate market share analysis because (1) he did not have the market share data he needed; and (2) he made a fatal assumption that he could exclude all competitors except for ATEN and Uniclass through a novel method he called "mapping." It is undisputed that Uniclass and ATEN are not the only KVM switch manufacturers that compete in the KVM switch OEM market in the United States. Mr. Snell stated:

> It is **my understanding from Mr. Chen that the accused products compete with ATEN's products as well as third parties' products**. In such circumstances, it is my understanding that a market share approach may be used to quantify ATEN's lost sales. In this case, the market at issue is the OEM market for KVM switches in the U.S. **I have not been able to identify**

---

[6] The issue of lost profits had been decided at the summary judgment stage. ATEN's argument that Mr. Chen's testimony is uncontroverted on lost profits at trial is misdirection because complete testimony on this topic was irrelevant and not elicited from Mr. Chen or any other witness. However, even the little testimony that was obtained in the context of a reasonable royalty demonstrates that "but for" causation could not be established by ATEN in a multi-competitor market.

[7] The parties do not dispute the relevant market: Mr. Snell stated that "[i]n this case, the market at issue is the OEM market for KVM switches in the U.S." Appx4765 at ¶ 56. In this OEM market, KVM switch customers (such as Airlink, Broadtech, and Black Box) buy KVM switches manufactured by OEMs (such as Uniclass) and then distribute and sell these KVM switches to other distributors or end consumers under the customer's own brand name. Appx4491 at ¶ 4.

> **market share data that would allow me to estimate the portion of sales that ATEN would have made**.

Appx4765 at ¶ 56 (emphasis added). Uniclass identified other competitive OEM KVM switch manufacturers: Rextron Technology, Inc. ("Rextron"); Tangtop Technology Co., Ltd.; Apass Technology Co., Ltd; Action Star Technology Co., Ltd.; and Power Communications Technology. Appx4506 at ¶ 83; Appx 4527; Appx4534; Appx4492 at ¶¶ 6-7; Appx4765; Appx 4556. Mr. Snell testified multiple times at trial that he was aware of competitors other than Uniclass in the relevant market. Appx8982 at 32:20-24; Appx8980 at 30:7-12; Appx8985-8986 at 35:25-36:2.

Mr. C.H. Chen testified on behalf of ATEN that there are "certain competitors out there who have competed with us with their low prices." Appx8432 at 21:21-24. Mr. Chen added, "there are certain companies who came into the [U.S. KVM OEM] market with very low-priced products. So that has made this market very competitive." Appx8440 at 29:16-19. Still, Mr. Snell's expert opinion inexplicably concluded that ATEN would have made every sale that Uniclass made, but for Uniclass's alleged infringement.

ATEN conceded the problems associated with determining market share in its 2015 annual report: "[w]hen seeking to calculate market share, it can be difficult to find an objective basis for comparison." Appx4493 at ¶ 11; Appx4506 at ¶ 85. As quoted above, Mr. Snell candidly admitted that he has "not been able to identify

market share data that would allow [him] to estimate the portion of sales that ATEN would have made." Appx4765 at ¶ 56. Yet, the lack of market share information for the KVM switch OEM market in the United States does not absolve ATEN from undertaking an appropriate analysis. Adequate market share information could have been obtained through studies, surveys, and polling.

Without being able to identify market share data that would support his "but for" analysis, Mr. Snell used what he called an "alternative method" that finds no support in fact or law. The "alternative method" was to identify certain of ATEN's products that ATEN believed were similar to Uniclass products, and then assume that each Uniclass sale was a sale that ATEN would have made. Mr. Snell calls this methodology "mapping," *i.e.*, mapping a Uniclass product with an ATEN product. Mr. Snell "assumed that ATEN likely would have made these sales based on [his] understanding from Mr. Chen, who indicated that ATEN and Uniclass have been the dominant suppliers in [the KVM switch OEM market in the United States.]" Appx4769 at ¶ 72. The district court rejected Mr. Snell's analysis, because Mr. Snell

> does not quantify what "dominant suppliers" means. As observed by Defendants, "dominant" could mean that ATEN and Uniclass represent 50% of the market and all the other competitors represent the other 50%. Snell makes no effort to account for other competitors, but claim ATEN would have made all of Uniclass' accused sales for the six identified products.

Appx22. "In essence, Snell equates his nomenclature of 'dominant suppliers' with a 'two-supplier' market without independent support and makes an assumption that

ATEN's actual products are sufficiently similar to Uniclass's products that they may be swapped in the marketplace." Appx21-22. "[U]nder the two-supplier test, a patentee must show: . . . the relevant market contains only two suppliers." *Micro Chemical, Inc.*, 318 F.3d at 1124. To the extent that Mr. Snell "impl[ied] that the combined market share of these other competitors was negligible," it never provided any factual support. Appeal Br. at 62. ATEN's argument that the size of the other competitors' market shares and the products they offered in the market are factual issues for the jury to decide, and cannot alleviate its affirmative obligation to put forth facts supporting its position at the summary judgment stage. APB at 62-63; Once the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

ATEN did not meet the basic evidentiary requirements for lost profits. Under *Grain Processing*, to maintain a case for lost profits, ATEN was required to carefully analyze how the market would have developed absent the infringement. Under *Oiness*, ATEN was required to provide sound economic proof of the nature of the market. Under *Wechsler*, ATEN was required to ensure that its analysis didn't lapse into speculation. ATEN's admission that it did not analyze market share, and in fact did not gather the information to do so ends the "but for" determination.

Attempting to use a new concept called “mapping” and assuming that a sale by Uniclass or its customers would by necessity be converted into a sale by ATEN fails as a matter of law to show what profits ATEN would have actually made in a multi-competitor market, if any. Because of the many gaps in ATEN’s market analysis, it cannot reconstruct the “but for” world that is required to meet the minimum threshold to establish lost profits. Summary judgment was therefore proper.

## CONCLUSION AND RELIEF SOUGHT

The Court should affirm the judgment of the district court.

Dated: June 27, 2018

Respectfully submitted,

*/s/ Robert E. Aycock*

Robert E. Aycock
PIA ANDERSON MOSS HOYT
136 E. South Temple, 19th Floor
Salt Lake City, UT 84111
(801) 350-9000

*Counsel for Appellees*

**2018-1606**

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing **RESPONSE BRIEF FOR APPELLEES** with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system and served a copy on counsel of record this 27th day of June, 2018 by the CM/ECF system and by electronic mail to the parties on service list below:

Laurence M. Sandell
Lei Mei
MEI & MARK LLP
818 18th Street NW, Suite 410
Washington, DC 20006
Telephone: (888) 796-1173
lsandell@meimark.com
mei@meimark.com

Dated: June 27, 2018

*/s/ Robert E. Aycock*
Robert E. Aycock
*Attorney for Appellees*

**2018-1606**

## CERTIFICATE OF COMPLIANCE

Counsel for Appellees hereby certifies that:

1. The brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because exclusive of the exempted portions it contains 13,378 words as counted by the word processing program used to prepare the brief; and

2. the brief complies with the type face requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Office Word 2016 in a proportionally spaced type face: Times New Roman, font size 14.

Dated: June 27, 2018

*/s/ Robert E. Aycock*
Robert E. Aycock
*Attorney for Appellees*