**2018-1606**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

---

ATEN INTERNATIONAL CO., LTD.,
*Plaintiff-Appellant*,

v.

UNICLASS TECHNOLOGY CO., LTD, ELECTRONIC TECHNOLOGY CO., LTD., AIRLINK 101, PHOEBE MICRO, INC., BROADTECH INTERNATIONAL CO., LTD. D/B/A LINKSKEY, BLACK BOX CORPORATION, BLACK BOX CORPORATION OF PENNSYLVANIA,
*Defendants-Appellees*.

---

Appeal from the U.S. District Court for the Central District of California in *ATEN International Co., Ltd., v. Uniclass Technology Co. Ltd., et al.,* Civil Action No. 2:15-cv-04424-AG-AJW, Judge Andrew J. Guilford.

---

**REPLY BRIEF OF APPELLANT
ATEN INTERNATIONAL CO., LTD.**

---

Laurence M. Sandell
Lei Mei
MEI & MARK LLP
818 18th Street NW, Suite 410
Washington, DC 20006
Telephone: (888) 860-5678 x717
lsandell@meimark.com

*Attorneys for Appellant ATEN International Co., Ltd.*

October 26, 2018

## CERTIFICATE OF INTEREST

Counsel for Appellant certify as follows:

1. The full name of every party or amicus represented by us is:

   ATEN International Co., Ltd.

2. The names of the real parties in interest represented by us are:

   ATEN International Co., Ltd.

3. All parent corporations and any public companies that own 10 percent or more of the stock of the parties represented by us are:

   None

4. The names of all law firms and the partners or associates that appeared for the parties now represented by us in the trial court or are expected to appear in this Court are:

   - Freeman A Mark, Irene H Chen, Manni Li & Philip Andrew Riley of Mei and Mark LLP;
   - Michael A Siem & Timothy Devlin of Devlin Law Firm LLC;
   - Andrew G Pearson, Christopher R Dillon, Craig E Countryman, Jane J Du, & Whitney A Reichel of Fish and Richardson PC;
   - Anthony J Tartaglio of Orrick Herrington and Sutcliffe LLP;
   - E Robert Yoches of Finnegan Henderson Farabow Garrett and Dunner LLP;
   - Grace L Pan & R David Donoghue of Holland and Knight LLP;
   - Kuan-Hsun Chiu & Laurence Kao of OPES Law PC;
   - Seth W Wiener of Law Offices of Seth Wiener; and
   - Steven Robert Daniels of Farney Daniels PC.

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal (*see* Fed. Cir. R. 47.4(a)(5) and 47.5(b)) are:

   *ATEN International Co., Ltd., v. Uniclass Technology Co., Ltd. et al.*, Federal Circuit Appeal No. 18-1922.

October 26, 2018

/s/ Laurence M. Sandell
Laurence M. Sandell

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................ 1

II. ARGUMENT ................................................................................................ 1

A. Uniclass Cannot Identify Substantial Evidence Supporting the Invalidity Verdict of the '141 Patent ............................................. 1

i. Uniclass Cannot Establish CS-1762 as Prior Art as a Matter of Law ........................................................................ 2

ii. Uniclass Cannot Identify Any Evidence that GB'540 Teaches Element 1.3 .................................................................. 5

B. The Record Establishes Infringement of as a Matter of Law ................... 8

i. As a Matter of Law, ATEN Met Its Burden to Prove that Uncontested Elements Were Satisfied by the Accused Devices. ........................................................................ 9

ii. The Only Basis for the Jury's '141 Patent Noninfringement Verdict in the Jury's Unreasonable Adoption of Mr. Dezmelyk's Interpretation of "Connected" that Is Far Removed from Its "Common Meaning" ...................................................................... 17

iii. There Is No Reasonable Basis for the Jury's '289 Patent Noninfringement Verdict ......................................................... 20

C. ATEN Did Not Waive its Ability to Attack Mr. Dezmelyk's Improper Claim Construction Arguments ........................................... 23

D. ATEN Was Unfairly Prejudiced by Mr. Demelyk's Dueling Claim Construction Testimony ........................................................... 26

E. Summary Judgment on Lost Profits Should be Reversed ................... 28

III. CONCLUSION AND STATEMENT OF RELIEF SOUGHT ..................... 28

# TABLE OF AUTHORITIES

## CASES

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001) ....................27

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................31

*Aqua Products, Inc. v. Matal*,
872 F. 3d 1290 (Fed. Cir. 2017) ....................7

*Broadcom v. Emulex Corp*,
732 F.3d 1325 (Fed. Cir. 2013) ....................10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................30

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
879 F.3d 1299 (Fed. Cir. 2018) .................... 17, 20

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
582 F.3d 1288 (Fed. Cir. 2009) .................... 5, 9, 16, 19

*Hagen v. City of Eugene*,
736 F.3d 1251 (9th Cir. 2013) ....................17

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*,
381 F.3d 1111 (Fed. Cir. 2004) ....................6

*LifeNet Health v. LifeCell Corp.*,
837 F.3d 1316 (Fed. Cir. 2016) ....................26

*LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*,
275 F.3d 1347, (Fed. Cir. 2001) .................... 9, 19, 20, 23

*Nelson v. Adams USA, Inc.*,
529 U.S. 460 (2000)....................23

*Nobelpharma AB v. Implant Innovations, Inc.*,
141 F.3d 1059 (Fed. Cir. 1998) ....................11

*Norsk Hydro Canada, Inc. v. U.S.*,
472 F.3d 1347 (Fed. Cir. 2006) ....................23

*Parkervision, Inc. v. Qualcomm Inc.*,
621 Fed. Appx. 1009 (Fed. Cir. 2015) ....................11

*Proveris Scientific Corp. v. Innovasystems, Inc.*,
536 F.3d 1256 (Fed. Cir. 2008) ....................10

*United States v. Great Am. Ins. Co. of New York*,
738 F.3d 1320 (Fed. Cir. 2013) .................... passim

*Verdegaal Bros. v. Union Oil Co. of California*,
814 F.2d 628 (Fed. Cir. 1987) ....................4

## OTHER AUTHORITIES

Fed. R. Civ. P. 56 ....................30

Fed. R. Evid. 703 ....................31

## I. INTRODUCTION

Over and over again, Uniclass' opening brief intimates that substantial evidence must have supported the judgments in its favor because that is what the Jury's verdict reflected. But this tautology is counter to law. Rather, this appeal requires that the Court evaluate the record evidence (and lack thereof) in light of the parties' respective burdens, discrete issues that were uncontested, and reasonable "common meanings" of claim terms whose "plain and ordinary meaning" governs. Once the Court engages in this task, it should find that the record simply lacks substantial evidence that any reasonable jury could have relied upon to find the '141 patent invalid or either of the '141 or '289 patents not infringed.

## II. ARGUMENT

### A. Uniclass Cannot Identify Substantial Evidence Supporting the Invalidity Verdict of the '141 Patent

On invalidity, this Court is asked (1) whether the defendant always bears the burden to prove that relied-upon art is, in fact, prior art by clear and convincing evidence, and (2) whether the defendant is required to provide non-conclusory, clear, and convincing evidence that every element is taught to prove invalidity. Federal Circuit precedent resoundingly answers both questions in the affirmative, demanding JMOL of no invalidity.

#### i. Uniclass Cannot Establish CS-1762 as Prior Art as a Matter of Law

In its brief, Uniclass represents to this Court that "it is clear that [Mr. Dezmelyk] testified that [the date of the allegedly anticipating firmware] was before July 27, 2006." Uniclass Br. 21; *see also id.* at 4, 14. The record begs to differ. As explained in ATEN's opening brief, the record contains absolutely zero evidence that the firmware that Uniclass exclusively relies upon for the CS-1762's satisfaction of elements 1.3 and 1.4 is prior to the critical date. ATEN Br. 30-31. Indeed, the cited portions of Mr. Dezmelyk's testimony fail to support its emphatic—but false—characterization of the record. *E.g.*, Uniclass Br. 20 (citing Appx9311-9316; Appx9338; Appx9302-930; Appx9313); *accord* Appx4; Appx9505-9506 at 143:4-144:1. And even assuming, *arguendo*, that such testimony implies support, it certainly does not do so clearly and convincingly, as is required.

Moreover, Mr. Dezmelyk did not even broadly testify that the "firmware [] was released in 2006 before the critical date of the '141 patent." *Contra* Uniclass Br. 20 (citing no supporting testimony); 21-22 (same). He merely irrelevantly averred, "that version of the software had been produced before the patent"—not one year prior to the patent. Appx9311 at 185:16-19. While the record contains Mr.

Dezmelyk's uncorroborated testimony that the firmware was from the same year as the critical date, that does not satisfy the legal standard. ATEN Br. 29-31.

Uniclass' related assertions that Mr. Dezmelyk's alleged "firmware release date" testimony is "corroborated" defy any reasonable legal understanding of the term: To wit, Uniclass only argues that its expert's testimony is "corroborated" by his own testimony, and ATEN's CEO's lack of testimony. Uniclass Br. 14, 21. The suggestion that a witness can corroborate his own testimony with his own testimony (or the absence of another's) is *prima facie* absurd. The clear and convincing standard demands actual corroboration of Mr. Dezmelyk's testimony. ATEN Br. 31 n.19. To that end, Uniclass effectively admits that the evidentiary record lacks any corroborating documentation. *Cf.* Uniclass Br. 21 n.3 (citing a trial exhibit list entry pertaining to an un-translated Chinese-language document that Uniclass declined to introduce after impeachment, that neither the lower court nor jury considered, and that ATEN had no opportunity to rebut).

Ultimately, although Uniclass parrots the lower court's erroneous reasoning that ATEN was somehow required to prove that the CS-1762 firmware was not prior art, its brief provides no legal authority to support that burden-flipping could be permissible in this instance. *See* Uniclass Br. 21-22. Similarly, Uniclass declines to dispute the fundamental legal tenet requiring that it offer clear and convincing evidence that asserted art actually predated the critical date. *Id.*

Beyond its failure to establish the firmware as prior art, Uniclass entirely declined to address ATEN's argument that the 2009 CS-1762 specimen tested by Mr. Dezmelyk—with a wholly unknown chain of custody—was undisputedly not prior art. ATEN Br. 30. Notwithstanding this, Uniclass offers no any legal authority entitling it combine three distinct instrumentalities—(1) the 2009 CS-1762 specimen, (2) the 2004 manual, and (3) the alleged 2006 firmware—in an anticipation argument. Yet, a "claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." *Verdegaal Bros. v. Union Oil Co. of Cal.*, 814 F.2d 628, 631 (Fed. Cir. 1987) (emphasis added).

Finally, and ironically, Uniclass' argument regarding the conclusory nature of Mr. Dezmelyk's claim 8 anticipation testimony is, itself, conclusory. *Compare* ATEN Br. 32 *with* Uniclass Br. 22. Dependent claim 8—by definition—has a limitation absent from independent claim 1. *See* Appx34 at 9:33-36. Nonetheless, Uniclass merely cites large swaths of Mr. Dezmelyk's claim 1 testimony and a curious allegation that his claim 8 testimony was somehow based on Dr. Lavian's analysis, and declares such evidence "sufficient." Uniclass Br. 22. It is not: The existence of substantial evidence sufficient to meet Uniclass' heightened evidentiary burden cannot be shown without identifying any relevant evidence.

Thus, as a matter of law, Uniclass has not proven that the CS-1762 manual, device, and/or firmware collectively anticipate(s) the '141 patent.

***ii. Uniclass Cannot Identify Any Evidence that GB'540 Teaches Element 1.3***

Uniclass does not dispute, and therefore concedes, that Mr. Dezmelyk did not substantively address element 1.3—"starting emulating the input device <u>to the first host</u>"—with respect to his GB'540 anticipation testimony. *E.g., United States v. Great Am. Ins. Co. of New York,* 738 F.3d 1320, 1328 (Fed. Cir. 2013) ("It is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived."). Any such dispute was also waived by Uniclass' failure to assert it below. *Compare* Appx8086-8088 *with* Appx8125-8126; *Fresenius USA, Inc. v. Baxter Int'l, Inc*., 582 F.3d 1288, 1296 (Fed. Cir. 2009) ("If a party fails to raise an argument before the trial court, or presents only a skeletal or undeveloped argument to the trial court, we may deem that argument waived on appeal….").

As predicted in ATEN's opening brief, Uniclass attempted to prop up Mr. Dezmelyk's conclusory element 1.3 testimony by referencing testimony regarding emulation that is divorced from the "to the first host" sub-limitation. *Compare* ATEN Br. 33-34 *with* Uniclass Br. 23. Indeed, Uniclass cites virtually no testimony outside of the broader testimony concerning "emulating" that was

already identified in ATEN's opening brief. *Id.* Tellingly, in response to ATEN's challenge to Uniclass to identify any testimony or evidence tending to show that the GB'540 disclosed "emulating…to the first host," Uniclass has remained silent. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004) ("[A]ll claim terms are presumed to have meaning in a claim.") Remarkably, Uniclass even declined to recite the critical sub-limitation in the anticipation section of its brief. Uniclass Br. 22-24. This anticipation allegation is forfeit.

Notwithstanding its thorough dodge of the ATEN's "to the first host" sub-limitation argument, Uniclass offers four arguments why substantial evidence of anticipation by GB '540 exists: (1) Dr. Lavian admitted that the GB '540 discloses a chip with a "host emulator function"; (2) "ATEN chose to ask Mr. Dezmelyk only one substantive question of the GB '540"; (3) the record allegedly contained "no contrary evidence regarding the GB '540"; and (4) "the jury's review of the prior art reference itself." Uniclass Br. 23-24. These arguments, alone or collectively, are meritless.

First, while Dr. Lavian readily admitted that the GB '540 disclosed a "host emulator function," he unmistakably explained that (and why) the emulation of GB '540 does not teach or disclose the "to the first host" sub-limitation. Appx9500-

9503 at 138:21-141:12. Uniclass' attempt to conflate all types of emulation and render the critical sub-limitation meaningless should be rejected.

Uniclass' second argument—that ATEN's cross-examination of Mr. Dezmelyk was not thorough enough—is nothing more than another invitation for legally-erroneous burden switching. *Aqua Prods., Inc. v. Matal*, 872 F. 3d 1290, 1305 (Fed. Cir. 2017). Despite bearing the burden to prove that GB '540 taught the critical sub-limitation, Uniclass failed to elicit substantive trial testimony from its expert. ATEN had no duty to give Mr. Dezmelyk an opportunity to backfill this gaping hole in Uniclass' invalidity case during cross-examination. ATEN's allocation of its limited trial time in a manner that avoided giving Uniclass another bite at the apple cannot absolve Uniclass from adequately making its anticipation case.

Third, Uniclass' representation to this Court that there was "no contrary evidence regarding the GB '540" blatantly ignores the evidence emphasized in ATEN's opening brief (in addition to inviting this Court to burden shift):

> Beyond Uniclass' failure to present clear and convincing evidence, Dr. Lavian offered detailed countervailing testimony. Appx9500-9503 at 138:5-141:120; Appx9493-9494 at 131:17-138:4.

ATEN Br. 34. Uniclass entirely declined to address this "contrary evidence regarding the GB '540." Uniclass Br. 24; *see Great Am.*, 738 F.3d at 1328.

Finally, Uniclass' fourth argument—that the lay jury must have found element 1.3 taught by the GB '540 patent based on its review of the complicated reference—is belied by its own failure to any identify portions of GB' 540 that colorably teach the critical sub-limitation. Given that no such disclosures exist in the reference, such an omission is unsurprising. There is no legal authority to support Uniclass' requested assumption that clear and convincing evidence may be presumed simply because the jury reviewed a prior art reference and found it anticipating.

As a matter of law, GB '540 has not been shown to anticipate.

### B. The Record Establishes Infringement of as a Matter of Law

On infringement, this Court must decide (1) whether it is reasonable for a handful of feeble credibility attacks to negate the burden-bearing party's overwhelming evidence on uncontested claim elements; (2) whether noninfringement testimony premised on an unreasonable, <u>non</u>-"common meaning" claim interpretation can negate the burden-bearing party's overwhelming evidence on otherwise uncontested claim elements; and (3) whether admissions by an accused infringer's own expert may conclusively establish satisfaction of claim elements notwithstanding that same expert's bare denials that those elements are met. Here, the accused devices' satisfaction of most claim elements is undisputed, and satisfaction of the few remaining elements is inescapable under any <u>reasonable</u>

claim interpretation. Thus, the Court should answer all questions in the affirmative, and find JMOL of infringement on the ’141 and ’289 patents.

***i. As a Matter of Law, ATEN Met Its Burden to Prove that Uncontested Elements Were Satisfied by the Accused Devices***

In its opening brief, ATEN demonstrated that its infringement contentions for, *inter alia,* elements 1.0, 1.3, and 1.4 of the ’141 patent and elements 1.0-1.4, 1.7, and 1.9-1.11 of the ’289 patent were uncontested. *E.g.,* ATEN Br. 13-14, 18-20. Notwithstanding that Uniclass declined to dispute the uncontested nature of any particular one of these elements in its opening brief or below, it baldly contends that it “does not concede those elements.” Uniclass Br. 40; *see* Appx8128-8134. Such contention is too little, too late. *Great Am.,* 738 F.3d at 1328; *Fresenius,* 582 F.3d at 1296.

But regardless of how Uniclass’ failure to rebut ATEN’s overwhelming evidence of infringement on undisputed elements is characterized, “the record before the jury [on the undisputed elements] contain[s] no evidence to rebut the substantial evidence of infringement,” rendering JMOL on them appropriate. *LNP Eng’g Plastics, Inc. v. Miller Waste Mills, Inc.,* 275 F.3d 1347, 1356-57 (Fed. Cir. 2001).

Uniclass makes an impassioned plea that the Seventh Amendment and the archetypal jury instructions regarding credibility determinations foreclose the possibility of JMOL in favor of a burden-bearing party. Uniclass Br. 39-41. But

because a reasonable jury simply could not find infringement to be defeated based on undisputed elements, this argument is meritless. This Court rejects attacks on "sufficiency of evidence to support … JMOL of infringement" where the accused infringer failed to "specifically argue at trial that it did not practice [a particular] limitation" and "elected not to cross examine [the patentee's] expert on this issue." *Broadcom Corp. v. Emulex Corp*, 732 F.3d 1325, 1333 (Fed. Cir. 2013).

Uniclass' attempts to distinguish ATEN's relevant authority are unavailing. *See* ATEN Br. 47-48. As to *Broadcom*, Uniclass' allegation that it "provided specific rebuttal testimony on various elements" is simply irrelevant when it comes to elements it did not dispute at trial. Uniclass Br. 42. Similarly, Uniclass suggests that *Proveris Scientific Corp. v. Innovasystems, Inc*., 536 F.3d 1256, 1266-67 (Fed. Cir. 2008) is inapposite because there, JMOL was granted in the absence of "***any*** expert to provide ***any*** evidence as to noninfringement." Uniclass Br. 42 (emphasis in original). But as to the uncontested elements, the same is true here. There is no legal or logical basis for Uniclass' implicit contention that uncontested elements should be deemed substantively disputed (*i.e.*, by reasonable evidence) just because <u>other</u> elements were affirmatively disputed.

Uniclass also attempted to distinguish *Broadcom* because, in that case, "defendant's expert made specific concessions." Uniclass Br. 41-42. But this is not distinguishing. Mr. Dezmelyk's presentation of all claim elements to the jury—and

explaining that he is only contesting some—is effectively a concession. ATEN Br. 14. And, Mr. Dezmelyk conceded that noninfringement and invalidity were mutually exclusive. ATEN Br. 11-12. These concessions are evidence that "the jury would not be at liberty to disbelieve," even if they are from Uniclass' own technical expert—and not a co-inventor. *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1065 (Fed. Cir. 1998); *cf.* Uniclass Br. 41 (distinguishing *Nobelpharma* on only this ground.)

Uniclass' attacks on *Parkervision, Inc. v. Qualcomm Inc.* also fall far short. 621 Fed. Appx. 1009, 1022 (Fed. Cir. 2015). Uniclass is correct that *Parkervision* concerned invalidity and not infringement, but this distinction actually serves to support ATEN's JMOL pursuit. Uniclass Br. 42. That is, the burden-bearing party in *Parkervision* bore a much more stringent burden (*i.e.*, clear and convincing evidence) than ATEN does here (*i.e.*, preponderance of the evidence)—and JMOL was still deemed appropriate. Uniclass also quotes *Parkervision* to suggest that its holding applies only where "the non-moving party 'failed to point to ***any*** basis on which a reasonably [sic] jury could have rejected'" the moving party's expert opinion. Uniclass Br. 42 (emphasis in original). But this is not the law, and, regardless, the same is true here with respect to the uncontested elements.

Ultimately, Uniclass grasps at straws, mischaracterizing the record in its attempts to distill any reasonable basis why the jury could have found any of

uncontested elements unmet. Uniclass makes three arguments: (1) Dr. Lavian's testimony was allegedly unsupported and he never inspected the accused products; (2) Dr. Lavian's testimony was self-contradictory; and (3) ATEN's allegations were too expansive. Uniclass Br. 38-39; *see also id.* at 46-47. All three fail.

First, Uniclass' generalized argument that Dr. Lavian's testimony was unsupported is practically untethered to the record. Uniclass cites only the trial exhibit list, apparently attempting to highlight the unremarkable, undisputed reality that Dr. Lavian did not testify on all available evidence. Uniclass Br. 38 (citing Appx7977-7982, Appx7988, Appx7994). Dr. Lavian testified that he would only discuss a few exemplary pieces of evidence for each claim element to avoid cumulative testimony. *E.g.*, Appx8709 at 101:9-14; *see also* ATEN Br. 13 n.13, 18 n.17. No reasonable jury could find Dr. Lavian's testimony incredible based on his decision not to offer cumulative evidence.

Similarly, Uniclass' contention that a reasonable jury could find Dr. Lavian's testimony incredible simply because he did not demonstrate an accused product at trial is baseless. Uniclass Br. 38. While demonstrations might have made Dr. Lavian's opinion testimony even more persuasive, no authority supports that a *prima facie* infringement case requires such demonstrations or that such omissions could cause a reasonable jury to disbelieve uncontested expert testimony.

ATEN's opening brief identified the specific portions of Dr. Lavian's infringement testimony that pertained to each element "with reference to exemplary documentary evidence"—including the uncontested ones. ATEN Br. 13 n.14, 18-19 n.18. Uniclass declined to address this evidence in its opening brief. *Great Am.*, 738 F.3d at 1328. Rather, with—at most—a single exception addressed immediately below, Uniclass offered no evidentiary basis—or even colorable attorney argument in support of its "unsupported" charge.

One specific sub-argument that requires addressing was that Dr. Lavian never used the accused Prima T products[1], and that somehow that this rendered his testimony unreliable. Uniclass Br. 5, 6, 38. Dr. Lavian did not inspect a "Prima T" device, but rather inspected an earlier version of the same device—a "Prima." Appx8758 at 45:2-13. As Dr. Lavian repeatedly testified, and as Uniclass' own source code attests, the devices operate identically in all relevant aspects. Appx8853-8855 at 64:12-66:23 (citing Appx9831); Appx8764 at 50:16-23; Appx8765-8768 at 51:3-54:4. But even assuming, *arguendo*, that this was not the case, Dr. Lavian, relied on evidence <u>other than</u> his inspection of the related device in contending that each element was satisfied by the accused Prima T—including Uniclass' own manuals, schematics, source code, and flow charts. *See* ATEN Br. 13 nn.12-14, 18-19 nn.16-18; *cf.* Appx8483-8484 at 72:12-73:5 (testifying that, in

[1] This argument is inapplicable to the A* devices.

general, he used device testing to confirm his opinions). *Contra* Uniclass Br. 49 (misconstruing Appx8483-8484 at 72:12-73:5). Ultimately, Uniclass declined to rebut any of the substantial Prima T infringement evidence that Dr. Lavian actually relied upon.

Uniclass' second argument, which alleges contradictions in Dr. Lavian's testimony in support of an allegedly reasonable basis for disbelieve his testimony, quickly falls apart upon review of the record. Uniclass faults Dr. Lavian for testifying about source code notwithstanding his statement that he "didn't need to look at source code." Uniclass Br. 38. However, in context, this truncated quote was merely a component of Dr. Lavian's repeated explanations that source code was one of the several sources of evidence he relied upon, that the various sources corroborated one another, and that he only highlighted a few pieces of evidence for each element to avoid repetition. Appx8482-8483 at 72:20-73:11. *See* ATEN Br. 13 nn.12-14, 18-19 nn.16-18

Uniclass also contends, "Dr. Lavian gave conflicting testimony that 'emulated' means both 'connected' ***and*** 'disconnected.'" Uniclass Br. 38 (emphasis in original). But the muddled, disparate portions of the record cherry-picked from an eight-day jury trial indicate nothing of the sort. Rather, when viewed in context, the citations reveal no more than an unclear cross-examination record. The first citation, Appx8838 at 49:15-24, was unfairly excerpted from a

cross-examination regarding a specific demonstrative slide animation outside the record—but not directed to any particular accused device. Appx8836-8839 at 47:11-52:16. The lack of clarity throughout this transcript section stems from, *inter alia*, the cross-examining attorney's failure to specify if he refers to a physical connection, an electrical connection, or both; and his failure to specify from which device or component's perspective "connected" is assessed. The haze is further exacerbated by the absence of the very diagram being discussed from the record. Nonetheless, the context of Uniclass' first truncated quote suggests that Dr. Lavian is attempting to explain (in the specific circumstance of the specific frame of a non-record animation) that when a device is emulated to the host, the host views the device as connected due to a communication from the emulator chip. Appx8838-8839 at 49:11-50:30.

The second citation, Appx9524 at 62:7-12, also suffers from an egregious lack of clarity:

> When the input device is <u>replaced</u> with the emulator, <u>right, right here</u>, the input device is disconnected from the host and replaced with an emulator; right?
>
> A. Yes.

*Id*. Here, the record is unclear as to what diagram is being referred to, and regarding what portion of it "right here" refers to. But even aside from the lack of appropriate context, the quote reflects nothing more than Dr. Lavian's agreement

with an irrelevant hypothetical that is a near tautology, namely that disconnection happens when a connected device is physically removed from the system (*i.e.*, replaced with another component). Under any fair reading, this citation does not suggest that "emulated" means "disconnected" as Uniclass contends.[2]

Finally, Uniclass' attack on the alleged expansiveness of ATEN's allegations provides no basis for its contention that a reasonable jury could have found some or all of the uncontested elements unsatisfied. To the extent that Uniclass believed that such expansiveness resulted in a failure to meet its *prima facie* burden on any particular uncontested element, it should have made the argument and created a substantive dispute. Both below and in its opening brief, it failed to do so[3] and offers generalities instead. Any such arguments are waived. *Great Am.*, 738 F.3d at 1328; *Fresenius*, 582 F.3d at 1296.

---

[2] Uniclass also attacks Dr. Lavian's credibility by taking out-of-context snippets from a confusing re-cross. Uniclass Br. 46-47 (citing Appx8865-8868). There, Dr. Lavian stated that he did not understand what was being asked five times. Appx8865 at 76:23; Appx8866 at 77:2-3, 77:14, 77:22; Appx8867 at 78:20-24. Moreover, one attempt to clarify was cut off prior to answering a virtually unintelligible question, the answer to which Uniclass cites with gusto. Appx8867-8868 at 78:25-79:9. A reasonable jury could not find Dr. Lavian's credibility undermined by his providing a handful of less than clear answers to confusing questions at the end of many hours of testimony—especially given that English is not his first language. Appx8834 at 45:21.

[3] Uniclass' suggestion that ATEN's allegations against "dozens of products" indicates failure is nothing but smoke and mirrors. Notably, Uniclass declined to dispute that infringement of all of the A* products rise and fall together. *See* ATEN Br. 3 n.2.

At least as to the uncontested elements, Uniclass has been unable to identify any "relevant evidence as reasonable minds might accept as adequate to support [the jury's] conclusion." *Hagen v. City of Eugene*, 736 F.3d 1251, 1256 (9th Cir. 2013).

#### ***ii. The Only Basis for the Jury's '141 Patent Noninfringement Verdict Is Its Jury's Unreasonable Adoption of Mr. Dezmelyk's Non-"Common Meaning" Interpretation of "Connected"***

The parties are in agreement that: (1) Uniclass' attempt to import a "direct" limitation into "connected" was rejected during claim construction, and consequently the plain and ordinary meaning of "connected" governed, Uniclass Br. 7; (2) the Jury was properly instructed to use the "common meaning" of the term, Uniclass Br. 32 (citing Appx9543 at 181:23-25); and (3) Mr. Dezmelyk interpretation of "connected" is embodied by his testimony that "an input device is connected to a host when it responds to requests from that host," and that a device is not "connected" if "it is not responding to polling from the host," Uniclass Br. 43-44. No reasonable lay jury could find such a narrow interpretation to reflect the "common meaning" of "connected." ATEN Br. 50-52. It is not what "the claim language simply requires." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1307-08 (Fed. Cir. 2018). And Uniclass <u>still</u> has not contended that it is. *See* ATEN Br. 14-15 (summarizing how Mr. Dezmelyk interpreted the prosecution

history to arrive at his "claim construction" despite the rejection of Uniclass' proposed construction that approximated it).

Uniclass generically attacks ATEN's assessment that Mr. Dezmelyk's interpretation excludes indirect connections as a "distract[ion]" and "mischaracterize[ation]," but entirely fails to explain how Mr. Dezmelyk's testimony could logically lead to any other conclusion. Uniclass Br. 43; *Great Am.*, 738 F.3d at 1328. The parties agree that Mr. Dezmelyk considers a linking that passes data between components not to be a connection unless there is "responding to polling from the host." Uniclass Br. 44; Appx9333 at 207:1-4. While this hyper-technical, narrow interpretation of "connected" might describe an "active connection" or a "direct connection"—terms absent from the claim, it cannot reasonably be understood to reflect a "common meaning" of "connected."

As a corollary to Mr. Dezmelyk's uncommon and narrow interpretation of "connected," he unreasonably and broadly defines "emulation" as "what happens when the input device is disconnected"—*i.e.*, not "responding to polling from the host." Appx9252 at 126:12-17; Appx9333 at 207:1-4. Accordingly, Mr. Dezmelyk considers all indirect data links and all non-"active connections" to embody "emulation" even if such links continuously communicate (e.g., keyboard data) between two devices. Appx9332-9333 at 206:18-207:4.

Uniclass touts testimony from Mr. Dezmelyk and its own engineer that the accused devices are "always emulating" and "never connected." Uniclass Br. 44-46. But such testimony is meaningless in view of Uniclass' unreasonably narrow interpretation of "connect" and corresponding unreasonably broad interpretation of "emulate."[4] In short, such testimony evinces nothing more than the irrelevant fact that the accused devices "do not respond to polling from the host."

This Court has upheld, *de novo*, JMOL on infringement in strikingly similar circumstances. *Contra* Uniclass Br. 36-37 ("ATEN provides no authority…."). In *LNP Engineering*, the Federal Circuit found that the plaintiff had offered substantial evidence of infringement on a patent related to fiber-reinforced thermoplastics. 275 F.3d at 1350, 1356 (Fed. Cir. 2001). In an attempt to rebut infringement, the defendant had asserted that the claim required a flexural modulus of at least 90%, and consequently introduced evidence that its products had modulus of less than 78%. *Id*. at 1357. This Court held that the relevant claim was "not limited by any flexural modulus result," and therefore determined that "the

[4] Uniclass' alleged evidence under "the interpretation that ATEN adopted" is nothing of the sort because Mr. Dezmelyk's understands "emulation" to be the absence of "connection" under his interpretation. This noninfringement argument is the contrapositive of Mr. Dezmelyk's opinions on elements 1.1 and 1.2. Additionally, Uniclass' element 1.3 argument under "the interpretation that ATEN adopted" is raised for the first the first time on appeal, and should be rejected accordingly. *Fresenius*, 582 F.3d at 1296; *compare* Appx8091 *with* Appx8130-8133; Uniclass Br. at 45-46; .

record before the jury contained no evidence to rebut the substantial evidence of infringement." *Id.* Accordingly, it upheld the district court's grant of JMOL on infringement. *Id*.

Here, notwithstanding Uniclass' feeble attacks on Dr. Lavian's credibility, it cannot seriously be disputed that ATEN—by way of Dr. Lavian's testimony and the copious documentary evidence cited therein—offered overwhelming evidence of infringement on every element. *See* ATEN Br. 13 nn.11-14. All of Uniclass' noninfringement evidence is premised on Mr. Dezmelyk's unreasonably narrow interpretation of "connected." ATEN Br. 52-53. Accordingly, because "the record before the jury contained no evidence to rebut [ATEN's] substantial evidence of infringement," JMOL of infringement of the '141 patent is warranted. *LNP*, 275 F.3d at 1357.

***iii. There Is No Reasonable Basis for the Jury's '289 Patent Noninfringement Verdict***

As an initial matter, Uniclass' offers no argument, evidence, or even a bald assertion that Mr. Dezmelyk's interpretation of "occupied" is what "the claim language simply requires" or its "common meaning." *Finjan,* 879 F.3d at 1307-08; Appx9543 at 181:23-25. Instead, Uniclass attempts to justify Mr. Dezmelyk's "claim construction" of the critical term solely though his analysis of the intrinsic evidence. Uniclass Br. 48-49. And other than its meager attacks on Dr. Lavian's

credibility[5], Uniclass has declined to contest that "satisfaction of all disputed claim elements rises and falls with Mr. Dezmelyk's unreasonably restrictive interpretation." ATEN Br. 54. As such, ATEN's appellate infringement case is effectively undisputed. *Great Am.*, 738 F.3d at 1328.

But even assuming, *arguendo*, that "the plain and ordinary meaning of 'detecting occupation' is to identify physical occupation of the port by a cable without <u>necessarily</u> detecting the flow of messages," there is no reasonable dispute that the '289 patent is infringed. Uniclass Br. 48 (emphasis added).To wit, Uniclass' inclusion of the word "necessarily" in its revisionist[6] interpretation of Mr. Dezmelyk's "claim construction" indicates that "detecting occupation" does <u>not</u> preclude "detecting the flow of messages" as a mechanism to determine physical occupation.

From this point, infringement—at least in some circumstances—is straightforward. Notwithstanding Uniclass' rebuttal arguments, it remains undisputed (i) that the accused product assesses the "flow of messages" though its IN port to determine if a "master KVM" is connected to it; (ii) that a "flow of messages" can only be received if the IN port is "physically occupied"; and (iii)

---

[5] *See* Section II.B.1, above.

[6] *E.g.*, Appx9233-9234 at 107:23-108:9 (The Prima T "waits to see if it got messages and makes a determination based on messages from the KVM switch, but <u>that's not what this limitation covers</u>.")

that no "flow of messages" can be received if the IN port is NOT "physically occupied." ATEN Br. 57-58.

Uniclass fails to meaningfully address this logical proof in ATEN's opening brief, but offers two hasty arguments in response. First, Uniclass egregiously misconstrues the proof, rendering it a nonsensical strawman. Uniclass Br. 49. To avoid confusion, Uniclass' language fairly describes ATEN's argument if the following revisions are made:

> ~~it is possible that~~ in at least *some* instances the accused Prima T ~~may be able to~~ necessarily detects occupation based on ~~without~~ the flow of physical messages.

Uniclass Br. 49 (italics in original; deleted text indicated by strikethrough; added text underlined).

Second, Uniclass reiterates its unsubstantiated credibility attacks on Dr. Lavian. Here, Uniclass wholly ignores that regardless of whether Dr. Lavian's testimony is substantial evidence for the proof, the proof is sufficiently established by a combination Mr. Dezmelyk's admissions and logic. ATEN Br. 57-58. Indeed, the portions of Mr. Dezmelyk's and Mr. Chen's testimony cited by Uniclass in response confirm (i) and do nothing to undermine (ii) and (iii). Uniclass Br. 50 (citing Appx9221-9222, Appx9229-9231, and Appx9102-9103[7]).

[7] Contrary to Uniclass' representation, this portion of Ted Chen's testimony discusses only the receipt of messages and not physical occupation.

Once again, the record reveals that ATEN offered overwhelming evidence of infringement with respect to every element. ATEN Br. 18-19 nn.15-18. And as ATEN's opening brief explains, Uniclass' noninfringement evidence is exclusively premised on Mr. Dezmelyk's unreasonably narrow interpretation of "detecting occupation" that unreasonably excises from claim scope the detection of occupation via "detecting the flow of messages" ATEN Br. 54-56. Accordingly, "the record before the jury contained no evidence to rebut [ATEN's] substantial evidence of infringement" and JMOL of infringement of the '289 patent is warranted. *LNP*, 275 F.3d at 1357.

### C. ATEN Did Not Waive its Ability to Attack Mr. Dezmelyk's Improper Claim Construction Arguments

While Uniclass posits that ATEN's oral objection is insufficiently related to its appellate arguments (and in ATEN's 52(b) motion), it cites no authority other than ATEN's cases. *Compare* ATEN Br. 43 *with* Uniclass Br. 25. And those cases expressly do "not demand the incantation of particular words," but merely that the court be "fairly put on notice as to the substance of the issue." *Nelson v. Adams USA, Inc.,* 529 U.S. 460, 469 (2000); *Norsk Hydro Can., Inc. v. U.S.,* 472 F.3d 1347, 1359 (Fed. Cir. 2006).

Moreover, beyond replicating the lower court's reasoning on this point, Uniclass did not address ATEN's substantive "no waiver" arguments. Uniclass Br.

24-25 (quoting Appx9). For example, Uniclass declined to meaningfully contest ATEN's contention that, "ATEN's counsel's ensuing argument [in support of the objection] laid plain what the objection was really about—namely, Mr. Dezmelyk's improper presentation of dueling claim constructions to the jury." ATEN Br. 45. This failure is fatal to Uniclass' waiver argument. *Great Am.*, 738 F.3d at 1328.

Similarly, with respect to the requisite timing of ATEN's objection, the only authority Uniclass cites was taken from ATEN's opening brief and indicates that an objection raised "during trial" is not too late. Uniclass Br. 25 (citing *LifeNet Health v. LifeCell Corp.*, 837 F.3d 1316, 1322 (Fed. Cir. 2016)).

But even assuming, *arguendo*, that ATEN was required to raise an objection as soon as it became aware of Mr. Dezmelyk's testimony, that is actually what happened. Uniclass makes much of the fact that (like in virtually every patent litigation) the parties engaged in claim construction, exchanged expert reports, had a pre-trial conference, submitted *Daubert* motions, and prepared preliminary instructions—and that ATEN did not raise its objection at any of these pre-trial litigation stages. Uniclass Br. 25-29. But ATEN could not have "repeatedly and decidedly abandoned" its dueling claim construction arguments because Mr. Dezmelyk did not reveal his allegedly "correct claim construction(s)" until he testified at trial. Uniclass Br. 25; *e.g.*, Appx9317 at 191:2-3.

Uniclass identifies several generic statements in Mr. Dezmelyk's voluminous expert report that indicate his opinion that the experts' have differing claim interpretations and express his position that the claims were invalid under Dr. Lavian's. Uniclass Br. 26-27. But this proves nothing: Uniclass failed to even allege—let alone offer evidence—that Mr. Dezmelyk's expert report (a) revealed what his allegedly "correct claim construction" was for either disputed term, or (b) described what Dr. Lavian's allegedly "wrong" "claim construction(s)" were. Appx9317 at 191:2-6; Appx9334 at 208:14-16. Uniclass' charge of "complacency" fails because, absent such disclosures, ATEN lacked meaningful notice that Mr. Dezmelyk would (again[8]) offer improper dueling claim construction testimony. Uniclass Br. 28.

Ultimately, Uniclass' silence on what these "claim constructions" were continued until Mr. Dezmelyk testified at trial. *E.g.*, Appx9240 at 114:4-6; Appx9241 at 115:15-22; Appx9230 at 104:6-16. Moreover, Mr. Dezmelyk's "claim construction" for the '141 patent still remained somewhat enigmatic until ATEN probed it on cross-examination—at the conclusion of which ATEN promptly made its objection. *See* Appx9332-9333 at 206:18-207:4; Appx9357-9360 at 231:23--234:18.

---

[8] Mr. Dezmelyk was previously prohibited from "offering opinions based on different claim constructions" in another patent case focused on similar technology. Appx9329 at 203:2-24.

The lower court's waiver finding is contrary to law and should be reversed.

### D. ATEN Was Unfairly Prejudiced by Mr. Dezmelyk's Dueling Claim Construction Testimony

Uniclass' perfunctory arguments against ATEN's unfair prejudice are unavailing.

Initially, Uniclass argues that ATEN's "dueling claim construction" characterization of Mr. Dezmelyk's testimony "overstates," and recasts it as a legally permissible "straddle." Uniclass Br. 30. But there is no dispute that Mr. Dezmelyk testified that he offered opinion under two diverging "claim constructions." ATEN Br. 38-40. And, none of the cases cited by Uniclass sanction presenting this sort of "straddle" to the jury. *Compare* Uniclass Br. 33-34 *with* ATEN Br. 37.

Uniclass continues with a specious argument that unfair prejudice is foreclosed "because nothing precluded the Jury from accepting or rejecting parts of both experts' testimony" or "from drawing reasonable inferences and coming to its own conclusions." Uniclass Br. 30-31. Taking this argument to its logical conclusion reveals its absurdity: Under this reasoning, unfair prejudice could <u>never</u> stem from the introduction of improper testimony or other evidence—after all, a jury could always reject it and come to its own conclusion. In the same vein, Uniclass' contention that ATEN's closing argument somehow "dispelled <u>any</u>

potential [jury] confusion" is baseless—and rendered ludicrous when the inconsistent special verdicts are taken into account. Uniclass Br. 32 (emphasis added).

Although the jury was told to only use the lower court's claim construction, there is ample reason to believe that the jury did not follow instructions. *Contra* Uniclass Br. 31. Mr. Dezmelyk undisputedly referred to multiple claim constructions and the jury heard the same without any mitigating instructions from the trial court. ATEN Br. 11-12. In view of Mr. Dezmelyk's dueling claim construction testimony and his clear admission that invalidity and noninfringement were mutually exclusive under either experts' respective "construction," the resulting inconsistent special[9] verdicts are powerful evidence that jury improperly used diverging claim constructions for both anticipation and infringement.[10] *E.g.*, Appx9317 at 191:16-25. Here, the lower court abused its discretion by disregarding to Mr. Dezmelyk's unambiguous, wide-reaching, and dispositive admissions merely because it was a "single statement" in a long trial. Appx12. The parties' respective burdens of proof on these issues also cannot explain away the

---

[9] Uniclass declined to address ATEN's authority on inconsistent special verdicts; instead, it offers inapposite authority regarding inconsistent "general verdicts." *Compare* ATEN Br. 28 *with* Uniclass Br. 33.

[10] *Cf. Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("A patent may not, like a nose of wax, be twisted one way to avoid anticipation and another to find infringement." (citation omitted)).

jury's apparent disregard of the important admission,[11] especially in light of the many uncontested elements for infringement.

Finally, Uniclass' argument that "it was proper" for the Jury to find noninfringement because it found invalidity strains credulity. Uniclass Br. 35. The Jury was instructed that infringement and validity were distinct inquiries, the special verdict form indicated the same, and the jury had no occasion to consider the legal axiom cited by Uniclass. *E.g.*, Appx9539 at 177:13-16, Appx9562 at 200:21-23; Appx9564 at 202:9-23; Appx9765-9771. Thus, regardless of the eventual practical effect that an invalidity determination inures, it would have been *per se* improper for the jury to have found noninfringement based solely on its (unreasonable) invalidity verdict.

At base, the inconsistent special verdicts manifested the very jury confusion that ATEN expressly warned the lower court would result from Mr. Dezmelyk's dueling claim construction testimony. Appx9359-9360 at 233:25-234:18. Accordingly, absent any mitigating instruction by the lower court, such jury confusion unfairly prejudiced ATEN.

### E. Summary Judgment on Lost Profits Should be Reversed

In its response, Uniclass fails to directly address most of ATEN's arguments

[11] Similarly, as discussed in Section II.B.1, above, a reasonable jury could not have relied on Mr. Dezmelyk's testimony to find element 1.3 unsatisfied in view of his concession that the element was met.

that genuine issues of material fact exist that warrant reversal of the lower court's summary judgment decision. Specifically, that district court erroneously based its unsound-economic-principles finding on Mr. Snell's (i) reliance on statements of ATEN witness Mr. Chen when forming his opinion, and (ii) alleged failure to "properly account for the other competitors" in the U.S. KVM OEM market. ATEN Br. 58-64.

As an initial matter, Uniclass' response appears to conflate the lower court's rejection of lost profits in the *overall* KVM market—<u>which ATEN does not appeal</u>—with its rejection of lost profits in the much narrower original-equipment-manufacturer ("OEM") KVM market for only those ATEN products that were successfully "mapped" to accused Uniclass products. For example, Uniclass relies on an alleged "ATEN[] admission that it did not analyze market share," (Uniclass Br. 56), but any such admission pertains <u>only</u> to the overall KVM market. Accordingly, the evidence concerning the KVM market-at-large—and not just the OEM market for the "mapped" products—is a red herring that should be disregarded. *See* Uniclass Br. 53 nn.53, 54.

Turning to the portions of the lower court's decision actually on appeal, while the phrase "dominant suppliers in the market" might otherwise be ambiguous, Mr. Snell explicitly clarified in his report that he used the term to mean "a two-supplier market." Appx4769 at ¶72. This was because, although other

competitors may have existed in the relevant "mapped" market, their combined market share was negligible. ATEN Br. 61-62. This countermands the lower court's allegation that Mr. Snell "does not quantify what 'dominant suppliers' means." Appx22.

But beyond Mr. Snell's clarification, the lower court erred by casting any ambiguity in the term against ATEN, the non-movant. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). And ultimately, whether Mr. Snell properly accounted for these other competitors turns on the size of their respective market shares and the products they offered in that market, which are <u>clear issues of material fact</u> that are properly left for the jury to decide—and which Uniclass could have probed through deposition. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1314 (Fed. Cir. 2014). Indeed, Uniclass has shown itself repeatedly unable to identify "any unaccounted-for non-negligible competitors" in "the <u>relevant</u> segments of the U.S. KVM OEM market." ATEN Br. 63. Moreover, Uniclass does not contest that, to recover lost profits, ATEN "<u>need not negate every possibility</u> that the purchaser might not have purchased a product other than his absent the infringement." ATEN Br. 58 (citing *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1141 (Fed. Cir. 1991)).

Mr. Snell's reliance on Mr. Chen's statements in forming his opinions was both permissible and reasonable. *See* ATEN Br. 59-61. Mr. Snell's report makes

clear that the factual basis for his opinions with respect to market competitors and for comparing or "mapping" ATEN's products to those of Uniclass was the relayed personal knowledge of Mr. Chen, the "head of ATEN's OEM department," who possesses an extensive understanding of the relevant "mapped" market. *See, e.g.*, Appx4750, ¶8; Appx4767, ¶64; Appx4769, ¶¶71-72. And under Fed. R. Evid. 703, experts may base their opinion on facts or data of which the expert was made aware if—such as here—"experts in the particular field would reasonably rely on those kind of facts or data"; Rule 703 "does not predicate admissibility on the source of the facts or data or, in particular, on whether the source is employed by either of the parties." *Apple*, 757 F.3d at 1321. Uniclass does not challenge , and thus concedes, that FRE 703 and *Apple*'s holding apply here. Moreover, Mr. Chen's personal knowledge upon which Mr. Snell relied could be conveyed to a jury through trial testimony, and thereby would have provided sufficient evidence for a reasonable jury to decide these issues in ATEN's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment on ATEN's lost profits claim should be reversed.

## III. CONCLUSION

For the above-mentioned reasons and the reasons expressed in ATEN's opening brief, ATEN respectfully requests from this Court the relief requested in its opening brief.

Dated: October 26, 2018

Respectfully submitted,

/s/ Laurence M. Sandell
Laurence M. Sandell
Lei Mei
MEI & MARK LLP
818 18th Street NW, Suite 410
Washington, DC 20006
Telephone: (888) 860-5678 x717
lsandell@meimark.com

*Counsel for Appellant ATEN Int'l Co., Ltd.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS PURSUANT TO FED. R. APP. P. 32(A)(7)(B)

I hereby certify that this principal brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(A) because the brief contains 6,889 words, according to the word-count function of the word processing system used to prepare the brief (Microsoft Word 2011).

Dated: October 26, 2018

/s/ Laurence M. Sandell
Laurence M. Sandell

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing and the addendum thereto with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit through the appellate CM/ECF system on October 26, 2018.

/s/ Laurence M. Sandell
Laurence M. Sandell